GUTHRIE v. SPARKS, Presiding Judge, et al.

(Circuit Court of Appeals, Sixth Circuit. August 2, 1904.)

No. 1,307.

1. COUNTY RAILROAD BONDS—LEVY OF TAX FOR PAYMENT—KENTUCKY STATUTE.

Those provisions of Act Ky. Feb. 24, 1868 (Laws 1868, p. 622, c. 548), authorizing counties to issue bonds in payment for railroad stock, which made it the duty of the county judge to levy taxes for the payment of the principal and interest of such bonds, were not repealed by the new state Constitution of 1891, which continued the county courts, and also created fiscal courts in each county; nor by subsequent legislation thereunder embodied in the Kentucky Statutes of 1894, which devolved on the fiscal courts the duty of levying county taxes for general purposes, but expressly provided by section 1882 that the powers conferred should not extend to the levying of taxes to pay principal or interest of any railroad bond indebtedness. The effect of such provision was to leave the duty of levying such taxes, which is a purely ministerial one, resting upon the county judge.

2. SAME—REPEAL OF STATUTE BY IMPLICATION.

Ky. St. 1894, § 1882, which confers power on the fiscal court of each county to levy taxes for county purposes, but expressly excepts the power to levy a tax to pay any railroad bond indebtedness, or the interest thereon, is not repealed by implication as to such exception by section 1839 in the same chapter, which was originally enacted at a later date, and authorizes such courts to levy ad valorem taxes not exceeding a certain per cent. unless required to pay county indebtedness incurred prior to 1891, in which case they are authorized to make an additional levy therefor. Such provisions were not only brought together and re-enacted in the general statutes, but are capable of standing together, effect being given to the special exception created by section 1882.

3. MANDAMUS—PROCEEDING TO ENFORCE COLLECTION OF JUDGMENT—PARTIES.

Act Ky. Feb. 24, 1868 (Laws 1868, p. 622, c. 548), authorizing counties to issue bonds in aid of railroads, requires the county judge to levy taxes to meet the principal and interest of such bonds as they mature, and also requires the sheriff to collect such taxes, and to give a bond therefor, within 30 days after the levy shall have been made, providing that, if he fails to give such bond, he shall be removed from office by the judge, who shall appoint a collector. *Held*, that in a proceeding for a writ of mandamus to compel the levy of a tax to pay a judgment recovered on such bonds the sheriff was properly joined, although no duty would devolve on him until the levy had been made, where it was alleged that he had pledged himself not to give the bond or make the collection; and that, in case he should refuse to give the bond, the writ should require the judge to remove him, and appoint a collector to enforce the collection.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

John A. Pitts and D. M. Rodman, for plaintiff in error.
W. L. Reeves, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This case, like that of Jabine v. Sparks (No. 1,301) 131 Fed. 440, and heard together with that, is a

¶ 3. Mandamus to compel payment of judgment against municipality, see note to Holt County v. National Life Ins. Co., 25 C. C. A. 475.

proceeding to enforce by mandamus the levy and collection of a tax on the assessable property in the county to satisfy a judgment recovered by the plaintiff in error on June 1, 1895, against the county, in the court below, for the sum of $8,148.09, with interest and costs, upon bonds running for 20 years, with coupons for interest issued by the county March 1, 1869, under the authority of the Acts of the Kentucky Legislature of 1867–68. The act of February 24, 1868, made it the duty of the county judge to levy taxes upon the property in the county for the purpose of paying the bonds authorized by the act, and the interest thereon as they should become payable. After paying the interest until the year 1874, the county repudiated the bonds, and refused to make further payment thereon, either of principal or interest, and has ever since refused to pay them, or to pay the plaintiff's judgment, which was for some of said bonds. The county judge has refused to make any levy to pay the judgment. An execution issued on the judgment was returned nulla bona, and the plaintiff has no remedy except that of a writ of mandamus to compel the levy and collection of a sufficient tax. The issue of the bonds by the county was in payment for stock of the Elizabethtown & Paducah Railroad Company, subscribed for and taken by the county under the authority of said act of February 24, 1868 (Laws 1867–68, p. 622, c. 548), and the validity thereof and the obligation of the county to pay the bonds has been repeatedly declared by the state and federal courts, and, as above stated, the bonds of the plaintiff were merged in the judgment of June 1, 1895.

On March 21, 1903, the plaintiff in error here, Guthrie, filed in the court below his petition making the defendants in error, Sparks, the county judge, Blackwell, the sheriff, and the county of Muhlenberg respondents therein, and alleging the recovery of his judgment, the issue of an execution, and its return unsatisfied; that it was the duty of the county judge to levy a tax for the payment of the bonds on which his judgment rested, but that the county judge had refused to levy such tax, and had never levied any tax to pay the judgment; that at a session of the county court recently held at the county seat the plaintiff had made a demand upon the respondent Sparks, county judge, to make the levy of a tax to satisfy his judgment; and that said respondent refused to make any levy. The petition further set forth that it was the duty of the sheriff to collect all taxes levied under the authority of said act of February 24, 1868, and recited a Kentucky statute requiring the sheriff to give bond for the collection of taxes, and declaring that, if he failed to give the same within 30 days after levy of the tax, he should forfeit his office, and the court should have power to appoint a collector, who should have the powers of a sheriff in making such collection; and in reference to him (the said sheriff) the petition stated that he "announces and gives out in his speeches that he will not give bond and qualify to collect any tax levied under said act"; and that in a similar case pending in the same court the sheriff had refused to give bond for more than 30 days, but that the county judge nevertheless refuses to remove him. And, finally, the petition stated that the general tax bills would go into the sheriff's hands about July 1, 1903, and, if no one should qualify to collect the tax to pay the judgment before the end of the May term of the court, other state and

county creditors might acquire a preference over the plaintiff in the collection of their claims. The prayer of the plaintiff was that a mandamus issue whereby the respondent Sparks, as county judge, should be required to make the levy, and that this should be done in time for the levy to go in the current tax lists of 1902 (stating the particulars of the proposed directions), and "that the said county judge, sitting as the county court aforesaid, be commanded and directed in said writ to order that the present sheriff of said county, W. D. Blackwell, if he be then in office, give bond, qualify, and proceed to collect said levy; if the said Blackwell be not in office at the time said levy is ordered, that the officer or person acting in his place as sheriff be ordered to qualify, give bond, and proceed to collect said levy, and to pay over to the plaintiff the amount of his judgment and costs, and the balance, if any, to be held subject to the orders of said defendant county court; and, in the event that the said sheriff, Blackwell, or other officer taking or acting in his place, shall fail or refuse to give bond, qualify, and proceed to collect said levy, that the said defendant county court be ordered to forfeit the office of said sheriff or other officer, remove him from office, and to continue said orders and removal until a collector is found who will give bond, qualify, and collect; and, in the event that after the removal of said sheriff such other officer shall fail and refuse as aforesaid and be removed, that the said defendant county court be required to appoint some citizen of the state of Kentucky named by plaintiff, and otherwise qualified, and allow him to give bond, qualify, and collect said levy; that the said defendant county court be further commanded that in making the appointment of a collector in the event of the removal of the sheriff or other officer, that said collector need not be a resident of Muhlenberg county, but may be a resident of any part of the state of Kentucky, otherwise qualified; that the defendant county court be commanded to do and perform all the above duties without unnecessary delay, and that he be required to make his return to the said writ, and show what he has done thereunder, at some day during the coming May term of this honorable court, or at a called term thereof; and he prays for all such further orders and writs as he may be entitled to enforce the collection and payment of his said judgment." On May 4, 1903, Sparks and Blackwell appeared, and filed separate demurrers, each of which was stated to be for the reason that the petition did "not state facts sufficient to constitute a cause of action against him." The matter came on to be heard the same day, but the court, not being advised, took time. On November 23, 1903, the court delivered its opinion. The question which the court had been considering, and which was deemed the turning point in making its decision, was whether, in the then state of the statute law of Kentucky, the county judge, sitting as the county court, was authorized to levy the proposed tax, or whether that duty had been devolved upon the so-called "fiscal court" of the county, consisting of the county judge and the several justices of the peace of the county associated with him. The learned judge was of opinion that the authority to make the levy was vested in the fiscal court, and not in the county court represented by the county judge, and sustained the demurrers of the county judge and of the sheriff. The plaintiff then amended his petition by stat-

ing that the justices of the peace of the county were hostile to the levy of any tax, and could not be brought together to consider the matter; that the county judge had declared that he would not call them together; that the fiscal court is only required to have two sessions in each year; that it has power to change the time of meeting, and cannot be called together except by the county judge; and that by reason of the evasions of the members of the fiscal court he would be without any practical remedy. The county judge and the sheriff renewed their demurrers. The court sustained the demurrers and dismissed the petition upon the same ground as he had sustained the previous demurrers. Some other considerations were advanced, to which we may refer later. The writ of error brings the order dismissing the petition here for review.

In Meriwether v. Muhlenberg County Court, 120 U. S. 354, 7 Sup. Ct. 563, 30 L. Ed. 653, decided in 1887, it was held by the Supreme Court, following in that regard the decisions of the Kentucky Court of Appeals, that the duty of levying taxes under the provisions of the act of February 24, 1868, was a ministerial duty, which was devolved by the act upon the county court represented by the county judge, and not the county court called the "court of claims," consisting of the county judge and the justices of the peace of the county, and charged with the duty of laying the county levy, appropriating money, and transacting other financial business of the county. By the Constitution of Kentucky adopted in 1891 and the legislation of the assembly during the years following its adoption, certain changes were made in regard to the powers and duties of the county courts, and it is contended for defendants in error that these changes have resulted in transferring the duty of levying the taxes required by the act of 1868 from the county judge to the "fiscal court" of the county as it is now called. For the plaintiffs it is contended, first, that if it was intended to make this substitution, the new remedy is so uncertain and insecure that the change amounts to an impairment of the obligation of the contract of the county with the holders of its bonds; but, second, that in fact no such transfer of this particular duty was contemplated by the convention or by the Legislature in ordaining the provisions referred to. We pass by without deciding the first of the propositions of the plaintiffs thus stated, for the reason that we are of opinion that their second proposition is correct. By section 140 of the new Constitution it was ordained that there should be a county court in each county, and by section 141 that:

"The jurisdiction of the county court shall be uniform throughout the state, and shall be regulated by general law and until changed shall be the same as now vested in the county courts of this state by law."

Then section 144 provides that:

"Counties shall have a fiscal court, which may consist of the judge of the county court and justices of the peace, in which court the judge of the county court shall preside if present, or a county may have three commissioners to be elected by the county at large, who together with the judge of the county court shall constitute the fiscal court. A majority of the members of said court shall constitute a court for the transaction of business."

Inasmuch as the new Constitution was to take the place of the old one, these provisions simply continued the old courts, bestowing upon the

court of claims a title which would always have better described it. In regard to taxation, section 171 provided that "all taxes shall be levied and collected by general laws." Stress was laid upon this provision by the court below and by counsel in argument here, as if it established a new rule of taxation which had the effect to extinguish all inconsistent laws. But this is clearly a mistake. The convention did not intend to arrest the levy and collection of taxes under existing laws, but that the Legislature should enact general laws for the levy and collection of taxes, after which, and by consequence whereof, they would be levied, etc., by general laws. But with respect to this particular law it was impossible that the Constitution should have repealed it. It did not nullify this statute when it declared that statutes inconsistent with it should be void at that time or at some future time unless the Constitution should provide a certain equivalent; and this the Constitution did not do. It supplied no new remedy, and, if the old was not continued, there would have ensued a complete lapse of the obligation of the contract, with a prospect that perhaps some remedy would be supplied by future legislation. With respect to the obligation of a municipality, the substance of its value consists of the means provided for its enforcement; and it is no more possible for the people, by a provision of their Constitution, to impair the obligation of such a contract, than for a Legislature of a state. But we have no need to pursue this line of discussion further. We have referred to the established rule upon the subject as a reason for believing that the framers of the new Constitution did not intend to disturb this then existing law, and, if there were nothing more, we should have no hesitation in concluding that this was a law which was not presently repealed. But to guard against all misapprehensions, and to assure the preservation of existing rights, it was provided in a schedule which dominated this subject that "all rights, actions, prosecutions, claims and contracts of the state, counties, individuals or bodies corporate, not inconsistent therewith shall continue as valid as if this Constitution had not been adopted." The holders of these bonds had a right, and a remedy which was the essence of it, secured by a preexisting law. We are not concerned now with the question whether it was permissible to supply an equivalent remedy, for we are seeking only, to ascertain the meaning and intent of the Constitution. Section 59, under the title "Legislative Department," declared that the General Assembly shall not pass local or special acts to authorize or regulate the levy, the assessment, or collection of taxes. But this was a restriction upon future legislation, and in no wise impaired the validity of former laws, or the rights secured under them. This would be so even without the express declaration above quoted. For these reasons we think it entirely clear that the Constitution in no wise disturbed or affected the operation and effect of the act of February 24, 1868. But it is contended that, if the Constitution did not repeal that act, the subsequent enactments of the General Assembly did have that effect. We may say once for all that, so far as the subject of discussion is concerned, no subsequent legislation was had which would not have been equally valid if the new Constitution had not existed.

The Constitution directed that the Governor should appoint three commissioners to revise the statute laws and prepare amendments to

conform them to the Constitution, and that such revision and amendments should be laid before the next General Assembly for adoption or rejection in whole or in part. This was done. The General Assembly at its next session passed acts on different dates, and then finally assembled them with other statutes by revision in one whole, which was denominated the "Kentucky Statutes of 1894." On April 18, 1892, an act was passed containing the following provisions:

"The court of claims or levy or fiscal court of each county in this commonwealth is hereby authorized to levy and collect a poll and ad valorem tax to pay off the existing current indebtedness and to defray the current and necessary expenses of the respective counties of the commonwealth of Kentucky. But this act shall not be construed so as to authorize the court of claims or any fiscal court of any county to levy a tax to pay any railroad bond indebtedness of any interest on any such indebtedness. That the poll tax shall not exceed $1.50 on each male person of the age of twenty-one years or more residing in the county. The ad valorem tax shall not exceed fifty cents on the $100.00 worth of taxable property assessed in the county." Acts 1891–92, p. 40, c. 26, § 1.

And on October 17, 1892, another act of that Legislature was passed reading as follows:

"The fiscal courts shall hold their sessions at the county seats of their respective counties, and shall have jurisdiction to levy each year for county purposes a poll-tax on each male inhabitant of the county over twenty-one years of age not exceeding one dollar and fifty cents, and an ad valorem tax on all property subject to taxation within the county, whether belonging to natural persons or corporations, companies or associations, not to exceed fifty cents on each one hundred dollars in value thereof as assessed for state purposes, unless an additional tax be required to enable the county or taxing district thereof to pay the interest on and provide a sinking fund for the extinction of indebtedness of the county or district created prior to September twenty-eight, one thousand eight hundred and ninety-one, and for that purpose the fiscal court shall have jurisdiction to levy such additional tax as may be authorized by law in force prior to September twenty-eight, one thousand eight hundred and ninety-one, and shall superintend the collection of all such tax." Acts 1891–92, p. 270, c. 101, § 7.

Both these enactments were carried into the revision by the same Legislature, and are found in the same chapter 52 (Ky. St. 1894), under the title "Fiscal Courts." In the following order, in that chapter, section 1833 provides that the fiscal court in each county shall consist of the county judge and the justices of the peace. Section 1834 provides "that unless otherwise provided by law, the corporate powers of the several counties of the state shall be exercised by the fiscal court thereof, respectively." Then in section 1839 is the above-quoted provision of the act of October 17, 1892. Section 1840 confers similar, but no more specific, authority; and section 1882 is the foregoing quotation from the act of April 18, 1892. It is contended for the respondents that section 1839, having been originally passed at a later date than section 1882, repealed the same by implication, and upon this assumption that one is a later act than the other, the rule of construction which is supposed to be applicable to statutes holding that relation is invoked. We doubt, however, whether upon this assumption the later statute, which simply confers a jurisdiction in general terms, would repeal an act which so specifically denied jurisdiction in a particular class of cases. There is room for both statutes to have a field of operation, the special

statute in the particular cases and the general statute in the cases not thus eliminated; for it is not doubted that a county may have many other kinds of indebtedness than "railroad bonded indebtedness." But we do not think the rule sometimes applicable to a special act succeeded by a general one should be applied here. The general rule is that an act which relates to a particular subject is not repealed by a later one which is general in its terms, but would include the particular case if that were not already provided for. The exception to this rule is that, if it plainly appears that the later general statute was intended to cover the particular case, and hold sway in place of the former act, the latter must be regarded as repealed by implication. But, as repeals by implication are not favored, the intent to repeal must "plainly appear." And it is manifest that it cannot be said that the intention to repeal is clearly shown when the general statute by its own terms admits of exceptional cases where other provision is made. The above-stated rule has been applied in a great number of cases by the Supreme Court of the United States, and the exception in some. The cases most nearly in point here are State v. Stoll, 17 Wall. 425, 21 L. Ed. 650; Ex parte Crow Dog, 109 U. S. 556, 3 Sup. Ct. 396, 27 L. Ed. 1030; Chew Heong v. United States, 112 U. S. 536, 5 Sup. Ct. 255, 28 L. Ed. 770. But the revision of 1894 was a single body of statutes, and all its parts were brought in and re-enacted. Each chapter and all related parts having reference to any given subject treated are deemed to be a fresh expression of the law. We think, therefore, that chapter 52 should be construed as if it were a single enactment. All parts of it are to be deemed to have been under the eye of the Legislature when that body put it together and enacted it, and we believe that in such case the authorities upon the subject of statutory construction are generally agreed that the special declaration will stand for the special matter, and the general provision will cover all other matters not thus set apart, or, if there be none such, then, of course, both cover the same territory, and that part of the statute last written will prevail. Sutherland on Statutory Construction, § 153; Commonwealth v. Huntly, 156 Mass. 236, 30 N. E. 1127, 15 L. R. A. 839; Smith v. The People, 47 N. Y. 330; State v. Rotwitt, 17 Mont. 41, 41 Pac. 1004.

Then again it is to be borne in mind that section 1834 excludes from the powers of the fiscal court those cases where it is provided otherwise by law. If this means already provided by law, the present case would be excluded from this grant of power. If it does not mean that, but means (as we think most likely) such provision as might be made in that revision or by some subsequent enactment, this case would also be excluded. Again, the powers of the fiscal court are of a discretionary nature, requiring the exercise of judgment upon questions of expediency, and this is the reason why the justices of the peace of the county are brought in to aid the county judge by their counsel. And when it is said that that court shall have jurisdiction to levy taxes, more than the mere ministerial performance is intended. The amount of the taxes, and how much for the several purposes of the county, and in what year each tax should be raised—in short, the management of the fiscal affairs of the county—is delegated to it. But the levy of the tax required by the act of 1868 was a ministerial duty, for the discharge of

which there was no occasion for the exercise of the functions of the fiscal court. As was observed by Mr. Justice Harlan in Meriwether v. Muhlenberg County Court, supra:

"It is clear that the levy and collection of a tax to meet a county subscription to the stock of a railroad company is not a business connected with the laying of the county levy, or with appropriations of money out of said levy."

There was, therefore, no reason that we can see which should have moved the Legislature to transfer this duty from the county judge, to whom it then belonged, to the fiscal court, unless it was the merely fanciful one of creating uniformity; and that this was not a dominating purpose is shown by the exclusion from the powers of the fiscal court of such matters as were otherwise provided for by law. It was of no consequence to the county who should perform the duty. It was simple and absolute. The only consequence would be that the change might afford better means for embarrassing the creditors. Not only is it not permissible to attribute such a purpose, but we find, on the contrary, abundant evidence that the Legislature had no thought of disturbing vested rights or rendering them less secure. So by section 1057, chapter 35 of the same revision, the Legislature did not confine the power of the county court to the matters enumerated, but gave to it "such other jurisdiction as may be conferred upon it by law." And when, by section 1882, power was denied to the fiscal court "to levy a tax to pay any railroad bonded indebtedness," the law of 1868 conferring the power upon the county judge continued unrepealed, for there was no other law which furnished any remedy for enforcing payment of the bonds. Indeed, the distribution of the powers granted to these courts of the county, with the reservations contained in said grants, when construed and applied to the conditions then existing, as they should be, would, we think, retain the power here in question in the county judge.

Conceding that it would be in the power of the Legislature to change the system of levying and collecting taxes in the state, providing an equivalent substitute for the former method is supplied, and assuming that a grant of power to the fiscal court to make a levy and order the collection is the equivalent of a command to the county judge to do it, we are nevertheless of opinion that the Legislature did not intend to divest the power of the county judge to make the levy of taxes and order their collection granted by the act under which the bonds in suit were issued. We are not aware that the proposition now advanced by the respondents has the support of any adjudication of either the state or federal courts, but it is not wholly new. It was put forward by Fleming, the county judge who preceded the respondent Sparks, in his response to the alternative writ of mandamus issued by the court below in the case of Jabine et al. against him and the county, as a reason why he should not be required as county judge to make the levy. The response was held by Judge Barr to be insufficient, and was overruled. The opinion which he filed does not exhibit any discussion of the point, but the judgment necessarily determined that the legislation referred to did not take away the power to make the levy. The record of that case, brought into this court by writ of error, exhibited this defense, and it lay at the root of the whole proceeding. Notwithstanding this

the order of the Circuit Court was affirmed. No opinion was written, but the judgment here could not have been rendered if the respondent was not the proper person to be coerced by the writ. That judgment was between other parties, and so, of course, is not an estoppel. But it is in some sense a precedent.

The court below, in its opinion, expressed its view to be that:

"As to Blackwell, the sheriff, the petition is manifestly premature. No levy having been made, his refusal to qualify was 'in the air.' Certainly nothing has as yet arisen to make it his duty to give the bond required of him by the act, or to collect a levy which has not been made."

But it was distinctly decided otherwise by the Supreme Court in Labette County v. Moulton, 112 U. S. 217, 5 Sup. Ct. 108, 28 L. Ed. 698, where it was held proper to join in the writ those officers who were charged by law with the performance of successive duties required in the levying and collection of the tax. As soon as the levy has been made and tendered to him for collection, the sheriff's duty at once becomes imperative to proceed to give the bond, to qualify himself, and to collect the tax. That was a duty he took upon himself when he assumed his office. If he will not do that, the act of February, 1868, declares he shall forfeit his office and the county judge is required to declare the forfeiture, and thereupon to appoint a collector, who, if he accepts the appointment, must give the bond, and thereupon has the powers and duties of the sheriff in making the collection. It is argued for the respondents that when the sheriff has, upon his entrance into office, given the bond required of him to qualify himself, that bond secures the performance of every duty cast upon him as sheriff, and the further bond required of him when he comes to collect a tax is a cumulative security, and that it is only the failure to give the original bond which justifies his removal from office; and Schuff v. Pflanz, 99 Ky. 97, 35 S. W. 132, is cited, which hardly sustains the proposition contended for. But, assuming the general law as it now exists to be as contended, that in no wise relieves the stress of the obligation of the fifteenth section of the act of 1868, which declares that, if the sheriff will not give the bond, he shall forfeit his office; and this law, as we have held, has not been repealed. It would seem that, if the machinery for collecting the tax has been changed to such an extent as the contention just noticed would indicate, the question whether an equivalent remedy has been provided might become serious; but we have proposed to pass that question.

It was held in Jabine et al. v. Sparks, supra, by Judge Barr, whose ruling was affirmed by this court, that, if the sheriff should refuse to give the bond required by the fifteenth section of said act of 1868, the county judge should remove him, and then proceed to appoint a collector. The course of proceeding there marked out should be followed here.

The order dismissing the plaintiff's petition will be reversed, with costs, and the Circuit Court will be directed to overrule the respondents' demurrer, and to proceed in conformity with law, and not inconsistently with this opinion.