## CITY OF MEMPHIS v. POSTAL TELEGRAPH CABLE CO.

### (Circuit Court of Appeals, Sixth Circuit. May 1, 1906.)

### No. 1,503.

1. REMOVAL OF CAUSES—JURISDICTION—AMOUNT IN CONTROVERSY.

Where a suit was brought by a city against a telegraph company to recover $1,772 for street rentals for the maintainance of defendant's poles and wires and the bill prayed for the payment of the rentals or forfeiture of defendant's rights in the streets, and that its occupation thereof should cease, the matter in controversy was not necessarily limited to the amount of the money sought to be recovered, and hence a verified removal petition stating that the value of the matter in controversy was more than $2,000 sufficiently showed that the amount in controversy was sufficient to confer federal jurisdiction.

[Ed. Note.—Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennant-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. MUNICIPAL CORPORATIONS—CONTROL OF STREETS—USE BY TELEGRAPH COMPANIES—RENTALS—STATUTES.

Acts Tenn. 1879, p. 14, c. 10, § 4, provided that public streets and other property used by a municipal corporation for municipal purposes were thereby transferred to the custody and control of the state to remain public property for the uses to which it had previously been applied. Chapter 11, § 3 (p. 16), then declared that the city of Memphis was given power to repair all streets and other public grounds and places within the taxing district, to open, close, and widen and have entire control over all streets of the taxing district. Held, that such act conferred full power on the city to demand and receive compensation for the use of its streets by a telegraph company for the erection of the poles and wires.

3. SAME.

Such power was not nullified by Acts Tenn. 1885, p. 120, c. 66, § 1, authorizing any telegraph company to maintain its line along and over the public highways and streets of the cities and towns of the state and over any lands or public works belonging to the state.

4. EQUITY—LIMITATIONS—DEMURRER.

That a portion of the relief demanded by complainant in a suit in equity is barred by limitations may be raised by demurrer.

5. TELEGRAPHS—FRANCHISE—STATUTES—CONTRACT WITH STATE.

Acts Tenn. 1885, p. 120, c. 66, providing that any telegraph company may construct, operate, and maintain its line over and along the public highways and streets of the cities and towns of the state or across and

over any lands or public works belonging to the state, did not operate as a contractual franchise between the state and a telegraph company seeking to maintain its poles and wires along the streets of a city without paying a rental therefor if demanded by the city.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

For opinion below, see 139 Fed. 707.

Jas. L. McRee, for appellant.

Metcalf, Minor & Metcalf (J. W. Buchanan and Felder & Rountree, of counsel), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges, and McCALL, District Judge.

SEVERENS, Circuit Judge. The bill in this case was filed in the chancery court of Shelby county, Tennessee. The cause was removed on the ground of diverse citizenship of the parties by the Postal Telegraph Cable Company from that court into the United States Circuit Court for the Western District of Tennessee, where the defendants demurred to the bill. The latter court sustained the demurrer and dismissed the bill. The object of the suit was to enforce certain ordinances of the city of Memphis, passed December 20, 1894, and January 28, 1902, respectively, requiring the payment of rentals by telegraph companies operating in, and occupying the streets and other public places in the city with its poles and wires, and declaring that a failure to make payment of the rentals within a specified time should operate as a revocation of the license to use and occupy the streets. The rental required by the first of the ordinances was fixed at $2 per annum for each pole erected by the company, and that required by the ordinance of 1902 was fixed at $3. The bill alleges that the defendant had used and occupied with its poles and wires the streets of the city, and that payment of the rentals for the years from 1894 to 1902, inclusive of those years, amounting to $1,772, had been demanded of the company and refused, and the bill prayed for a decree for the payment of the rentals, or that the rights of the defendant in the streets be decreed forfeited, and that its occupation thereof should cease and determine, and for such other general and special relief as to the court might seem fit and proper. A statute of Tennessee authorizes the filing of a bill in equity to recover such charges as those here involved, and the question occurred to us upon the argument whether on the removal of the cause into the Circuit Court of the United States it should not have been assigned to its law docket on the theory that the suit was for a money demand. As respects the amount involved, the petition, which is sworn to, states that the value of the matter in controversy is more than $2,000, which may well be. The bill involves more than a money demand and asks, in a certain contingency, a decree ousting the telegraph company from the streets, a species of relief which could not be had at law. Moreover, no question as to the propriety of the exercise of the jurisdiction of a court of equity in the case has at any time been raised in the court below or in this court and the substantial question involved in the controversy

so far as the recovery of the rentals is concerned would be determined on the same principles whether presented in a court of law or in a court of equity. Upon a consideration of all these facts we have concluded that we ought not on our own motion to turn the parties back without decision here to a trial on the law side of the court. The question is one, not of the power of the court, but of fitness and expediency, and stands upon a different footing from what it would have done if it had been presented and considered at an earlier stage of the case. The grounds of the demurrer interposed by the defendant were, as assigned, these:

"(1) It appears from the said bill that the pole rental sought to be recovered is demanded by the city of Memphis, the plaintiff, by virtue of an ordinance of said city without any authority therefor from the state of Tennessee. (2) The control of streets and highways in the state of Tennessee rests in the said state and the bill fails to show any authority from the state to the plaintiff for exacting the rental sought to be recovered. (3) The city of Memphis, plaintiff, had no authority to enact the ordinance under which said pole rentals are demanded. (4) The said defendant further demurs to so much of said bill as seeks to recover for the period between December 20, 1894, and June 4, 1896, for that portion of said demand is barred by the statute of limitations. (5) The charge sought to be collected is a tax and unconstitutional as in violation of the Constitution of Tennessee, and of the United States."

The first three of these are all involved in the general question whether the city had lawful authority to impose this charge upon the defendant. The Legislature of Tennessee at its session in 1869–70 passed an act entitled "An act to reduce the charter of Memphis and the several acts amendatory thereof into one act, and to revise the same." Chapter 26, p. 225, Acts Tenn. 1869–70. Section 1 of this act granted to the city the right "to own and hold property, real, personal and mixed;" and declared that "all right, title, and interest in, and to use, all real estate within the limits of the said city which may hereafter be dedicated, donated or granted to any public use shall be vested in the corporation of the city of Memphis for the said use" and "that the city council may do all other things as a natural person." In 1879 the Legislature passed other acts relating to the power of the city. Section 4, c. 10, p. 14, of the acts of that year. "The public buildings, squares, promenades, wharfs, streets, alleys, parks, and fire engines—and all other property real and personal hitherto used by said corporation for municipal purposes are hereby transferred to the custody and control of the state, to remain public property as it has always been, for the uses to which said property has hitherto been applied." Then by section 3 of the following chapter (chapter 11, page 16), the city of Memphis is given power "to repair and keep in repair, streets, sidewalks, and other public grounds and places in the taxing district; to open and widen streets, to change the location or close the same and to lay off new streets and alleys when necessary; and to have and exercise entire control over all streets and other public property of the taxing district." And by section 14 (page 25) of the same chapter it is declared "that the fire engines (and equipment), engine houses, public buildings, public grounds, parks, promenades, wharves, streets, alleys * * * and all other property, real and personal, hitherto used by such corporations for purposes of govern-

ment, are hereby transferred to the custody and control of said board of commissioners," meaning the board of fire and police commissioners of the city.

It is seen that by the act of 1879 "the entire control" of the streets was granted by the Legislature to the city of Memphis. And we think that for reasons hereafter noted this grant of power included the power to demand and receive compensation for facilities afforded for a use and occupation not enjoyed by the general public. But it is claimed by the defendant that this grant of authority was superseded and rendered null so far as telegraph and telephone companies are concerned by the act of 1885, p. 120, c. 66, the first section of which provides that any such company "may construct, operate and maintain such telegraph, telephone or other lines necessary for the speedy transmission of intelligence along and over the public highways and streets of the cities and towns of this state, or across and under the waters and over any lands or public works belonging to this state." Our attention is called to the fact that in the prior statute (Milliken & V. Code, § 1535), relating to the same subject, such companies were granted this privilege "free of charge" as expressed therein, while in the act of 1885 these words were omitted. It is contended by the city that the Legislature by the act of 1885, which is a general statute, did not intend to resume the power of control of its streets which it had given to the city of Memphis by the act of 1869–70, and that the general law operates only as a permission, to exercise in the streets of Memphis the franchises granted to telegraph companies subject to the control which it had already granted to the city. We think that this contention should be sustained, first, upon the ground of the familiar rule of construction that a statute general in its terms will not repeal by implication a particular statute relating to some particular matter or locality unless the intention of the Legislature to repeal the special act shall plainly appear. We had occasion to consider this subject with special attention in Guthrie v. Sparks, 131 Fed. 443, 65 C. C. A. 427, where we said:

"The general rule is that an act which relates to a particular subject is not repealed by a later one which is general in its terms, but would include the particular case if that were not already provided for. The exception to this rule is that, if it plainly appears that the later general statute was intended to cover the particular case, and hold sway in place of the former act, the latter must be regarded as repealed by implication. But as repeals by implication are not favored the intent to repeal must plainly appear."

And we referred to several cases in the Supreme Court in support of this statement. In Sutherland on Statutory Construction (2d Ed.) § 275, it is said that:

"Unless there is a plain indication of an intent that the general Act shall repeal the other, it will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly."

This statement has a peculiar adaptation to the case before us. Again, there are certain special reasons for thinking that the Legislature could not have intended to displace the "entire control" of the streets which it had committed to the city. No one doubts, we sup-

pose, that the power to charge a telegraph company with a proportion of the cost of making and keeping in repair and policing a street of the city was lodged somewhere. And if so, no place was so appropriate for lodging it as in the city itself. It alone was obliged to bear the whole cost of maintenance. The share of the cost of maintenance for public use belonged to the city. The share due from the telegraph company for its special use was also due to the city, for the latter was carrying it, and its treasury should be reimbursed. It was a local matter and could be most conveniently attended to by the officials of the municipality who would be best informed of the circumstances and by all analogies the proper persons to assess and collect the charge. It would belong to no other public fund. It was therefore perfectly reasonable that the city should possess the authority to make and collect such a charge, and rather unreasonable that it should be committed to any other depositary of governmental authority. And there is no machinery provided by statute for the levy and collection of such charges by the state, and there was none when the Legislature passed the act of 1885. These seem to us strong reasons for believing that the Legislature had no intention of reserving to the state the power to charge the telegraph company for its proportion of the cost of maintaining the streets of the city of Memphis, but rather that it intended to leave that matter with the authority to which it had granted the power of control possessed by the state. The grant of "entire control" seems even a more absolute delegation of power than the power "to regulate," which was held in St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, and 149 U. S. 465, 13 Sup. Ct. 990, 37 L. Ed. 810, to authorize the city of St. Louis to assess and collect a like charge for the use of the streets for the maintenance of the structures of a telegraph company. Indeed that case, if we are right in thinking that the Tennessee Act of 1885 did not deprive the city of the control of its streets in this regard, is ample authority for holding that it had power to levy and collect the charges in question, the reasonableness of them not being now disputed; and the case of Postal Telegraph Co. v. Baltimore, 79 Md. 502, 29 Atl. 819, 24 L. R. A. 161, affirmed by the Supreme Court of the United States in 156 U. S. 210, 15 Sup. Ct. 356, 39 L. Ed. 399, is directly in point. See also further discussion of the subject in Western Union Tel. Co. v. Borough of New Hope, 187 U. S. 419, 23 Sup. Ct. 204, 47 L. Ed. 240, and Atlantic & Pacific Tel. Co. v. Philadelphia, 190 U. S. 160, 23 Sup. Ct. 817, 47 L. Ed. 995, and in Western Union Tel. Co. v. Pennsylvania R. R. Co., 195 U S. 566, 25 Sup. Ct. 133, 49 L. Ed. 312.

It is argued that this charge is a tax, and that the city of Memphis is not empowered to levy a tax not specified in its charter. But although such charges as these are sometimes called "taxes," they are not such as are generally meant in constitutions and statutes by that term. But by whatever name called, the power to impose them was given to the city by the grant of "entire control" over its streets. If there is a burden imposed upon abutting owners by the structures of the telegraph company, that is a matter between those parties, and is irrelevant to the subject of the present controversy.

The fourth ground assigned for demurrer was this: "The said defendant further demurs to so much of said bill as seeks to recover for the period between December 20, 1894, and January 4, 1896, for that period of said demand is barred by the statute of limitations." The Tennessee statute of limitations bars the recovery for such a demand after six years, and the yearly rental falling due December 20, 1895, would be affected by this limitation. The general rule is that in actions at law, the defendant must raise the defense by plea, and that it cannot be presented by a demurrer, for the reason that the plaintiff would then be cut off from his right to reply and prove matter in avoidance. Allen v. Word, 6 Humph. (Tenn.) 284. But the rule is different in equity, where the pleadings end in the formal replication, which denies the matters or the sufficiency of the matters set up in the answer; and the defense may be made by demurrer. Wyatt v. Luton, 10 Heisk. (Tenn.) 458; Dunlap v. Gibbs, 4 Yerg. (Tenn.) 94.

The fifth ground of demurrer is that the charge sought to be collected is "in violation of the Constitution of Tennessee and of the United States." But what provision of either of those instruments this charge infringed is not pointed out, and we are unable to apprehend what it may be, unless it is that a supposed contract was created between the state and the telegraph company by the act of 1885 and the action of the telegraph company thereunder, which is impaired by the city of Memphis in imposing this charge. But for the reasons stated we think that upon the proper construction of the act of 1885 the state did not propose to contract for an immunity to the telegraph company for charges of this character. As this appeal brings here only the questions raised by the demurrer we deal with nothing else.

The decree of the court below is reversed, with costs, except as to that part of the bill which seeks to recover the annual rental charge falling due December 20, 1895, as to which it is affirmed.