CUMBERLAND TELEPHONE & TELEGRAPH CO. v. CITY OF
MEMPHIS et al.

(Circuit Court of Appeals, Sixth Circuit.    December 3, 1912.)

No. 2,387.

1. COURTS (§ 407*)—REVIEW—DISCRETION—GRANTING OR REFUSING PRELIMI-
NARY INJUNCTION.

While, ordinarily, the granting or refusing of a preliminary injunction
is in the discretion of the trial court, and its action will not be reviewed
on appeal, yet, when the determinative question is one of law, and the
record shows that the court acted according to its view of this question,
and did not assume to exercise discretion in any matter of fact or of
expediency, the Court of Appeals, on appeal from an interlocutory order,
will decide the legal question and direct the granting or withholding of
the injunction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1100; Dec. Dig.
§ 407.*]

2. TELEGRAPHS AND TELEPHONES (§ 33*)—REGULATION—POWER.

The right to regulate and control rates charged by a telephone com-
pany is a legislative right of the state, which remains in the state Leg-
islature, and cannot be exercised by a municipal Legislature unless and
until it has been granted by the former to the latter.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 21; Dec. Dig. § 33.*]

3. TELEGRAPHS AND TELEPHONES (§ 33*)—TELEPHONE RATES—REGULATION—
"GENERAL WELFARE."

Acts Tenn. 1879, c. 11, § 3, after granting to the city of Memphis enu-
merated powers, provided that the city should have power over all other
affairs in the taxing district in which the peace, safety, and "general
welfare" of the inhabitants was involved; and by section 4 the municipal
legislative council was vested with the power and charged with the duty
of making all laws or ordinances not inconsistent with the general laws
on every subject within the local government instituted by the act. Acts
1903, c. 366, § 1, subd. 1, authorized the council to fix and regulate the
rates of certain public service corporations other than telephone com-
panies, which were also excluded from a subsequent act, passed in 1911,
bringing certain additional public service companies within the power
of rate regulation. By Acts 1905, c. 54, § 21, the council was given power
to pass for the government of the city any ordinance not in conflict with
the Constitution or laws of the United States or of the state of Tennes-
see. Held, that the term "general welfare," as used in section 3 of the
act of 1879, was limited to powers connected with those concurrently
granted, and that the city had not been granted legislative power either
by the original or subsequent acts to regulate the rates of telephone
companies doing business therein.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 21; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 4, p. 3081.]

4. TELEGRAPHS AND TELEPHONES (§ 33*)—CONSTRUCTION—INTENT—INCLUSIO
UNIUS—AMENDMENT.

Acts Tenn. 1903, c. 366, § 1, subd. 1, provided that the legislative coun-
cil of a taxing district should have power to fix and regulate the scale
of charges for the service of all district telegraph companies, gas com-
panies, street car companies, belt line companies, or switching companies
then or thereafter occupying any of the streets within such taxing dis-
tricts. Held, that such act, being amendatory to Acts Tenn. 1879, c. 11,
§§ 3, 4, granting the city of Memphis enumerated powers and power over

all other affairs of the taxing district involving the peace, safety, and general welfare of the inhabitants, and authorizing the passage of all ordinances not inconsistent with the general laws on every subject within the local government instituted by the act, must be considered, as to all acts subsequently done, as though it had always been a part of the original statute; and hence, under the rule of inclusio unius, it must be construed as evidencing a legislative intent not to delegate to the city, but to reserve to the state, the power to regulate the rates of telephone companies.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 33.*]

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Suit by the Cumberland Telephone & Telegraph Company against the City of Memphis and others. From an order denying a motion for a preliminary injunction, complainant appeals. Reversed and remanded.

See, also, 198 Fed. 955.

Wright, Miles, Waring & Walker, of Memphis, Tenn., and William L. Granbery, of Nashville, Tenn., for appellant.

Chas. M. Bryan, City Atty., and Leo Goodman, Asst. City Atty., both of Memphis, Tenn., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. This is an appeal, under section 129 of the Judicial Code,† from an order refusing a preliminary injunction. The city of Memphis passed an ordinance fixing maximum telephone rates. The telephone company, a Kentucky corporation, filed its bill of complaint, alleging that the ordinance was void for lack of power in the municipal council to legislate on the subject—it being the telephone company's theory that the power of such rate regulation has never passed from, and still remains in, the state Legislature. The court below, having reached the conclusion that the power was vested in the city, denied the motion.

[1] While, ordinarily, the granting or refusing of a preliminary injunction is in the discretion of the court below, and its action will not be reviewed here (City of Grand Rapids v. Warren Bros. Co. [C. C. A. 6] 196 Fed. 892), yet when the determinative question is one of law, and the record shows that the court below acted according to its view of this question, and did not assume to exercise discretion in any matter of fact or of expediency, this court will, upon appeal from the interlocutory order, consider and decide the legal question, and accordingly direct the granting or withholding of the injunction (Acme Co. v. Commercial Co. [C. C. A. 6] 192 Fed. 321, 323, 112 C. C. A. 573). The present case is of the exceptional class just mentioned.

[2] It is clear, and was not challenged in the argument, that the right to control the rates charged by a public utility to its patrons is a legislative right of the state, and that the right remains in the state

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Act March 3, 1911, c. 231, 36 Stat. 1134 (U. S. Comp. St. Supp. 1911, p. 194).

legislature, and cannot be exercised by a municipal legislature until and unless it has been granted by the former to the latter. Dillon on Munic. Corp. § 1325. The question, then, is whether a grant of this power from the state to the city of Memphis can be found in the words of, or by proper implication from, any existing statute. That it is not stated in express words is conceded, and so it must be found, if at all, included in the broad terms of some general language or by implication in connection with other provisions.

[3] We pass by some provisions which are suggested, but not much urged, as covering this power, and come at once to those sections upon which the court below mainly relied, and which have been chiefly relied on in the argument, and which we are satisfied are the only ones requiring serious consideration. Section 3 of chapter 11 of the Acts of 1879, after granting to the city enumerated powers, further provided that it "shall have power over all other affairs in the taxing district in which the peace, safety and general welfare of the inhabitants is interested"; and, by section 4, the municipal legislative council was "vested with the power and charged with the duty of making all laws or ordinances not inconsistent with the general laws, for every object, matter and subject within the local government instituted by this act." Both these clauses may be considered together, because we think they are not essentially distinct in effect. It is the settled rule that any such general words and phrases following or in connection with the granting of enumerated powers are to be construed in connection with such granting, and do not operate to convey broad powers disconnected with the previous subjects of the grant. In other words, it is the accepted theory of construction as applied to municipal charters that the statute specifies with reasonable particularity the powers granted, and thus limits and defines the municipal government established, and that "general welfare" and similar clauses are intended to operate, and do operate, only so far as necessary to carry out and effectuate the specific grants. This rule has not been better expressed than by the Supreme Court of Tennessee, in construing this very charter. In Long v. Taxing District, 75 Tenn. (7 Lea) 134, 138 (40 Am. Rep. 55), Judge Cooper said:

"If the only power given to pass ordinances be by a general provision, the provision would be liberally construed. But if the general grant is given *in connection with*, or at the end of, a long list of specific powers, the power conferred by the general clause would be restricted by reference to the other provisions of the act. Even in the broadest view, the general power would only authorize suitable ordinances for administering the government of the city, the preservation of the health and comfort of its inhabitants, the convenient transaction of business within its limits, and for the performance of its general duties required by law of municipal corporations. It would *not* authorize general legislation proper only for the Legislature of the state. To sustain such legislation by a municipal council, there must be special authority."

To say that section 4 goes further is to beg the question, because that section extends only to things "within the local governments instituted by the act," and if a particular matter like rate legislation is not within the local government already instituted by the act, then it is not covered by this section.

As applying to the matter here involved, we cannot find any different intent in, or result from, section 21, c. 54, of the Acts of 1905, which is:

"That the legislative council shall have power to pass for the government of the city any ordinance not in conflict with the Constitution or laws of the United States or of the state of Tennessee."

This is not a general power to pass any ordinance affecting the rights of property or of persons within the city; it is only "for the government of the city." Whether a rate-regulating ordinance is a matter that fairly pertains to the operation of the established city government is the very question in issue. If it does, it is covered by the act of 1879; if it does not, it is not reached by the act of 1905.

With this view of the city's charter powers, it must follow that the controlling issue here is whether the power to regulate telephone rates is necessary to the due and efficient exercise of the instituted city government; and the question so stated must be answered in the negative, whether we mean "reasonably necessary" or "inevitably necessary." Detroit Citizens' Street R. Co. v. Detroit Ry. Co., 171 U. S. 48, 54, 18 Sup. Ct. 732, 734 (43 L. Ed. 67). To regulate and control the use of the streets by telephone companies is a natural incident of municipal government (although here expressly granted, see City of Memphis v. Postal Company [C. C. A. 6] 145 Fed. 602, 76 C. C. A. 292), and this control involves the right to bargain for such use before the right is granted (as it has been here expressly granted); but these things pertain to relations between the city and the company. They do not touch the contract relations between the company and. its patrons. A city telephone exchange is not strictly local; this company is part of an interstate system; other communities are interested in the service. There are ample reasons why the state Legislature might wish to reserve this power to itself, and there is no reason why it is essential to the city. Accordingly, the decided cases deny this power to a city, unless specifically granted. City of St. Louis v. Telephone Co., 96 Mo. 623, 10 S. W. 197, 2 L. R. A. 278, 9 Am. St. Rep. 370; State v. City of Sheboygan, 111 Wis. 39, 86 N. W. 657; Mills v. City of Chicago (C. C.) 127 Fed. 731.

[4] As always in such cases, the vital question is one of legislative intent, and although we think this sufficiently appears from the language of the acts and from the rules of construction already discussed, it further appears from another section of the charter and from the history of this specific subject-matter. By subsection 1, § 1, c. 366, Acts of 1903, the legislative powers of the municipality in analogous subject-matter were declared as follows:

"The legislative council of such taxing district is hereby vested with the power and authority to fix and regulate, from time to time, within reasonable limits, the scale of charges for the product or service of all district telegraph companies. gas companies, street car companies, belt line companies, switching companies, now or hereafter enjoying or operating any rights or privileges to use or occupy any of the streets, alleys or public grounds within the territory of such taxing district."

It is a familiar rule of statutory construction, declared by the highest courts, both of the United States and of Tennessee (Blair v. Chi-

cago, 201 U. S. 400, 475, 26 Sup. Ct. 427, 446 [50 L. Ed. 801];
Goodbar v. Memphis, 113 Tenn. 20, 34, 81 S. W. 1061) that:

"A statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendment had always been there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed in view of the original statute as it stands after the amendments have been introduced." Endlich on Statutes, § 294.

Applying this rule, we find that, whatever construction might otherwise be given to broad and general language in the charter, it specifically grants this particular power of rate regulation with regard to other companies of the same general class, and that in this enumeration of analogous public service companies telephone companies are not mentioned. No reason is suggested why this specific mention was necessary as to telegraph or electric light companies, and not necessary as to telephone companies, and apparently this omission must be the result of a deliberate legislative intent to reserve and not to grant the power of rate regulation for telephone companies. Seldom is there a case so clearly calling for the application of the maxim "inclusio unius," etc.

In 1907 the city of Memphis passed an ordinance very similar to the one now involved. The complainant filed a bill similar to the present bill, and a motion for injunction was heard before the late Judge Clark. In his opinion he considers only section 21 of the act of 1905, and it is perhaps a fair inference that the defendant relied upon this section as its strongest and clearest warrant of authority for the ordinance. Judge Clark said:

"This must be construed as having reference only to the ordinary powers and authority exercised by municipal corporations, and such as are ordinarily conferred on them. This language, general as it is, could not be properly construed as authorizing the city to enter upon such an unusual and exceptional subject as that of rate regulation by a municipal corporation. Such a power does not arise by implication, but must be expressly conferred, or must be positively necessary to the exercise of a municipal power which is itself expressly delegated. That is not the case here, and I really think it is very clear that the city is without authority to adopt and enforce the legislation found in the ordinance called in question in this case."

This litigation was finally disposed of in 1910 without any final decision on the merits. City of Memphis v. Telephone Co., 218 U. S. 624, 31 Sup. Ct. 115, 54 L. Ed. 1185.

In 1911 the city charter was extensively amended, and some additional public service companies expressly brought within the power of rate regulation. The fact that telephone companies, although not named in the act as passed, were named in the bill as introduced, is not of much moment. Such a change may be merely a withdrawal by the proposer rather than the deliberate act of the Legislature. The *important thing is that, with this judicial determination as to the existing power of the city, the Legislature again considered the same subject-matter and made no change.* This confirms the conclusion as to its intent properly drawn from previous action.

If the rates are unreasonably high, it must be supposed that the Tennessee Legislature will either regulate them itself or delegate to

the city of Memphis the power of regulation; but we are clear that the remedy lies in that direction. We think the injunction should be granted.

The order refusing injunction is reversed, with costs, and the record remanded for proceedings in accordance with this opinion.