SHELBY COUNTY *v.* CUMBERLAND TELEPHONE & TELE-
GRAPH CO.

(*Jackson.*   April Term, 1918.)

1. **TELEGRAPHS AND TELEPHONES.** Pole rent.

Conceding that a county can, under the police power, require a
telephone company to pay a pole rent to defray expenses of
supervision and inspection, an order of the county court mak-
ing payment necessary only on failure to comply with certain
requirements could not be considered such an exercise of the
police power,   (*Post, pp.* 95, 96.)

Acts cited and construed: Acts 1885, ch. 66.

Cases cited and approved: Memphis v. Postal Tel. Co., 145 Fed.,
602; St. Louis v. Western Union Tel. Co., 148 U. S., Fort
Smith v. Hunt, 72 Ark., 556.

2. **TELEGRAPHS AND TELEPHONES.** Rates and service. Pen-
alties.

If a county court is without power to regulate the service or rates
of telephone companies, it is equally without power to im-
pose a penalty for bad service or extortionate rates. (*Post, pp.*
95, 96.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.
—HON F. H. HEISKELL, Chancellor.

R. LEE BARTELS, for appellant.

Shelby County v. Telephone & Tel. Co.

HUNT CHIPLEY, WRIGHT, MILES, WARING & WALKER and THOMPSON, WILLIAMS & THOMPSON, for appellee.

W. H. BIGGS, of Council.

MR. JUSTICE GREEN delivered the opinion of the Court.

The bill in this case was filed by Shelby county to collect from the Cumberland Telephone & Telegraph Company a pole rental of $1 per annum each for all the poles of the telephone company placed in the roads of Shelby county. The bill was dismissed by the chancellor, and the county of Shelby has appealed to this court.

The lines of the telephone company are located in Shelby county and its poles there erected by virtue of chapter 66 of the Acts of 1885, granting to such corporations the right to string their wires and plant poles "along and over the public highways and streets of the cities and towns of this State, or across and under the waters, and over any lands or public works belonging to this State, and on and over the lands of private individuals, and upon, along, and parallel to any of the railroads or turnpikes of this State, and on and over the bridges, and trestles or structures of said railroad; provided, that the ordinary use of such public highways, streets, works, . . . bridges, structures, and turnpikes be not thereby obstructed . . . by reason of the occupation of said land, railroads, and turnpikes, by said telegraph or telephone corporations." Section 1.

In addition to this legislative sanction the county court of Shelby county, by resolution passed on July 9, 1883, conferred a similar authority upon the defendant telephone company in the following language:

"It is hereby ordered by the county court of Shelby county, Tenn., that the Cumberland Telephone & Telegraph Company be and is hereby permitted to put up its poles, wires, appurtenances, and appliances on and along any and all of the public roads of the county of Shelby, in order to operate its telephones and telegraphs along the same, when the said company shall desire to do so. But in no event and in no manner to interfere with travel on any of the said roads, or to obstruct the same in any manner, and so as to not interfere with any private rights of citizens along the line or lines."

By a resolution passed July 15, 1907, the county court of Shelby county undertook to revoke the right of the telephone company to occupy the roads and highways of that county except upon certain conditions appearing in the resolution, which resolution will be hereinafter set out.

By the same resolution of July 15, 1907, the Shelby county court undertook to levy a charge upon the telephone company of $1 per annum for each one of its poles. This suit is predicated upon the resolution of the county court of July 15, 1907.

A number of defenses are interposed by the telephone company and many questions made by it. The

scope of our investigation has been very much limited and this controversy confined to a narrow compass by concessions of learned counsel for Shelby county.

On the brief of counsel for Shelby county it is said:

"There is no insistence on the part of the county that it could compel a removal of the poles from the highways—its only claim is the right to exact compensation for the use of the highways by the poles. Unquestionably the statute gave the telephone company a right of way; but it is the contention of the county that that is given, subject to the county's right in the exercise of its power to regulate and control its roads, to exact compensation for the occupation thereof by poles planted therein."

It is furthermore conceded on the brief of counsel for the county that the county has no right to regulate rates to be charged by the telephone company. and it must be conceded that the county has no right to levy any tax upon the telephone company except as the county may be authorized by the legislature.

It is urged on behalf of the county that the act of 1885 and the resolution of the county court of July 9, 1883, merely gave to the telephone company a license to occupy the roads and highways of Shelby county, and that this license does not preclude the county in the exercise of its police power from making a charge against the company in the nature of a pole rental by way of compensation to the county for the cost

of supervision and inspection of the company's poles and wires.

The telephone company insists that it has fixed or contract rights to occupy the roads and highways of Shelby county by reason of the act of the legislature and the resolution of the county court of 1883. It is agreed that it has spent many thousands of dollars in extending and improving its property in Shelby county upon the faith of said act and said resolution. The telephone company also denies that Shelby county has been intrusted with police power that would authorize it to make any charge of this nature against poles of the company.

Without deciding these questions, it may be conceded for the purposes of this case that the county would have a right, in the exercise of its police power, to exact a pole rental for the purpose of supervision and inspection, and it may be conceded that the telephone company has no rights in the roads and highways of Shelby county that would exempt it from such a charge; nevertheless, the county's suit must fail.

This results from the character of the resolution upon which this suit is predicated.

It is to be remembered that by concessions of counsel the county is without authority to require a removal of the company's poles and wires from the roads and highways of Shelby county; that it is without power to regulate the rates of the telephone company; and that it has no legislative authority to

exact any pole rental of the telephone company nor to levy any such tax upon the company for revenue.

Therefore all that can be claimed for the county is that it has police power over its roads and highways, and in the exercise of that power and in the interest of the public safety it may demand a pole rental in the nature of a fee for meeting the expense of inspection and supervision of the lines of the telephone company.

Bearing in mind these conditions, we now consider the resolution of the county court of Shelby county passed July 15, 1907:

"Be it resolved, that as the right was given the Cumberland and Memphis Telephone Companies to place their poles along the side of the county roads, provided they did not interfere with the roads, their use, or with the working of the same, and as the purpose of this was not to benefit the telephone companies or of giving to them free of charge the use of the public roads, but to secure to the rural residents of the county an efficient telephone service at reasonable rates; and whereas the service of the telephone companies has become exceedingly bad and the rates have been increased in many localities, and in some have been placed at an amount that prevents the use of the phone, and especially is so on the part of the Cumberland Telephone & Telegraph Company; and as it appears that a great number of the poles of both companies have been placed among the side ditches of the turnpikes and roads, thus great-

ly interfering with the working and managing of the roads; and that the companies fail to consult the proper county officials as to the location of their poles, or obeying them when said officials direct them where to locate the same: Now, therefore, be it resolved, that the permission heretofore given the said companies to use the county roads and turnpikes for their poles and wires is hereby revoked; and that said companies shall at once remove their poles and wires from the county roads, unless by the October term of the court they enter into the following agreement with the county of Shelby to-wit:

"First. That they remove all poles from ditches and traveled parts of the roads and turnpikes and place them where the county officials direct.

"Second. That they place no new poles until they have received definite and specific instructions from the county turnpike secretary as to the turnpikes, and from the new roads superintendent as to the dirt roads.

"Third. That in no way either by the location of the poles or wires in the erection and placing of the same shall they in any way obstruct the roads or turnpikes, or interfere with the traveling public; and if, at any time, by accident, storm, or otherwise, any of their poles, wires, or other property obstruct the highway or interfere with its use, that they are at once to remedy and remove the same.

"Fourth. That they furnish all persons in the county telephones with proper and adequate service

of the same at not more than $7.50 net per quarter for residences, payable in advance, or $3 per month, payable monthly; and $15 net per quarter for business phones, or $5.50 per month, payable monthly.

"Fifth. That when and as long as the above conditions are complied with, no rental shall be charged for the use of the right of way of the county roads.

"Sixth. Should the said companies, or either of them, fail or refuse before the October term of this court to agree to and assent to the above, and should they, or either of them, at any time, fail to observe the above condition in letter and in spirit, in either event a yearly rental of $1 per pole shall be paid for each and every pole placed by said companies on the right of way or any dirt or turnpike road in Shelby county outside of the city of Memphis.

"The first installment of rent shall be due and payable on the first day of January, 1908, and on the first of each succeeding year."

Obviously this resolution is not a *bona-fide* effort on the part of the county court of Shelby county to collect fees with which to pay the expenses of supervision and inspection of the telephone properties in that county.

There is no definite and unequivocal levy of the tax or charge. Its assessment is conditional.

If the telephone companies entered into the agreement set out as to the maintenance of their lines and as to their rates and observed these conditions, "no rental shall be charged for the use of the right of

way of the county roads." The rental is only exacted in the event the telephone companies fail or refuse to enter into the agreement outlined and to comply with its terms.

If this resolution had been passed out ·of concern for the safety of the inhabitants of Shelby county, and had been intended merely to promote this end by providing a fund for the inspection and supervision of the telephone poles and wires, we think the resolution would have been effective and unconditional in its terms.

Inspection and supervision are designed to bring about and keep up a safe condition of such utilities in the interest of the public.

The resolution of July 15, 1907, has no such tendency, and was not expected to provide a fund for such a purpose.

No matter how well the telephone companies reconstructed their lines, they would not escape the pole rental unless they reduced their rates. On the contrary, if the rates were reduced and the lines were reconstructed as set out, then no pole rental was due, and the subsequent maintenance of the lines was to be left without supervision. At least there was no supervision or inspection for the expense of which the telephone companies were liable.

The purpose of this resolution of 1917 is plainly indicated by its preamble, which recites that "whereas the service of the telephone companies has become exceedingly bad, and the rates have been increased

in many localities," etc., and that the permission here-
tofore given to said companies to use the county
roads and turnpikes is revoked unless said companies
enter into the agreement set out.

It seems plain that this pole rental was assessed
as a penalty for bad service and high rates. If the
rates were lowered and the service improved, the
pole rental was not to be exacted. The county court
was without power to regulate the service or rates,
and was equally without power to impose a penalty
for bad service or extortionate rates.

The resolution of July, 1907, was accordingly in-
effective for any purpose so far as we are advised
from the stipulation of facts.

Clearly it did not have for its purpose the raising of
a fund to defray the expenses of supervision and in-
spection of the reconstruction of the telephone lines
nor of their subsequent maintenance, since under the
conditions named the pole rental was not to be col-
lected at all.

The county relies on *Memphis* v. *Postal Tel. Co.*, 145
Fed., 602, 76 C. C. A., 292, *St. Louis* v. *Western Union
Telegraph Co.*, 148 U. S. 92, 13 Sup. Ct., 485, 82 S. W.,
Ed., 380, *Fort Smith* v. *Hunt*, 72 Ark., 556, 82 S. W.,
163, 66 L. R. A., 238, 105 Am. St. Rep., 51, and other
cases. These cases sustain the right of a munici-
pality to levy a charge in the nature of a pole rental,
under police power, for inspection and supervision
under circumstances like these before us. This is
as far as these authorities go, where the municipality

is acting without legislative sanction. Being of opinion that Shelby county has not undertaken to exercise its police power, for the purposes indicated, by the resolution of July, 1907, we think the cases cited are not in point.

We have not found it necessary to consider other questions made, and for the reasons indicated the decree of the chancellor will be affirmed.