(Decided 21st June, 1894.)

* * *

*THE POSTAL TELEGRAPH CABLE COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Control of Streets—Telegraph poles—Imposition of Tax.*

The City of Baltimore having full and complete control over its streets, may rightly impose a tax of two dollars on each of the poles, erected therein, of a telegraph company which has accepted the provisions of the Act of Congress of July 1866, entitling it to use the post roads of the United States for the operation of its lines.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, MCSHERRY, BOYD and BRISCOE, J.

*George H. Bates,* (with whom was *R. S. Guernsey,* on the brief,) for the appellant.

* The power of States to control or impose burdens upon interstate telegraph and telephone companies is fully annotated in a note to the above case in 24 L. R. A., 161.

Is it shown that there is any legislative authority or permission to impose this tax? A city ordinance for police regulation is void if it is made a means of revenue. *Vansant vs. Harlem Stage Co. of Baltimore City,* 59 *Md.*, 330; *State vs. Rowe,* 72 *Md.*, 548; *Comrs. of Easton vs. Covey,* 74 *Md.*, 263.

A regulation is not a tax. *Western Union Teleg. Co. vs. Pendleton,* 122 *U. S.*, 359. A tax is a regulation when applied to means of interstate commerce, and is within the prohibition of the United States Constitution that prevents any regulation of interstate or foreign commerce without authority of Congress. *Henderson, et al. vs. Mayor of New York,* 92 *U. S.*, 259.

An ordinance may regulate but not restrain trade. *Commissioners vs. Gas Co.,* 12 *Penn.*, 321; *Warren Borough vs. Geer,* 117 *Pa.*, 207; *Kneedler vs. Borough of Norristown,* 100 *Penn.*, 373; *Millerstown vs. Bell,* 123 *Penn.*, 155; *Sayre Borough vs. Phillips,* 148 *Pa. St.*, 482.

The State Legislature never intended and did not in fact surrender the State control of the streets in Baltimore to the Mayor and City Council of Baltimore. *Koch, et al., vs. North Avenue Railway Co.,* 75 *Md.*, 222; *North Baltimore Pass. Railway Co. vs. Mayor, &c., of Baltimore,* 75 *Md.*, 247.

" The right to exercise this power (the police power) cannot be alienated, surrendered or abridged by the Legislature, by any grant, contract or obligation whatsoever, because it constitutes the exercise of a governmental function, without which it would become powerless to protect those rights which it was especially designated to accomplish." *People ex rel. N. Y. Electric Lines Co. vs. Squire,* 107 *N. Y.*, 606.

The Legislature of a State cannot constitutionally transfer to municipal corporations the power of determining upon what property, taxes and assessments shall and what

shall not be imposed. *Cooley Const. Lim.*, 137, 6*th ed.*, 632 ; *State vs. Hudson County Avenue Commissioners*, 37 *N. J. L.* 19 ; *Brewer Brick Co. vs. Brewer*, 62 *Me.*, 62, 15 *Am. Repts.*, 395 ; *Wilson vs. Supervisors of Sutter Co.*, 47 *Cal.*, 91.

This tax is unequal and not according to the value of the class of property upon which it is imposed. *State vs. Cumb. & Penn. R. R. Co.*, 40 *Md.*, 51 ; *Daly vs. Morgan, et al.*, 69 *Md.*, 460 ; *Wells, et al. vs. Commissioners of Hyattsville*, 77 *Md.*, 125.

Constitutional provisions for the purpose of insuring equality in the levy and collection of taxes apply equally to all kinds of taxation, whether State, county, or municipal. *Cooley on Tax'n* (2d ed.), 134 ; *Burroughs on Tax'n, chap.* 19, *sec.* 130, *p.* 380 ; *Knowlton vs. Supervisors of Rock Co.*, 9 *Wis.*, 410 ; *Weeks vs. City of Milwaukee*, 10 *Wis.*, 242 ; *City of Zanesville vs. Auditor of Muskingum County*, 5 *Ohio St.*, 589 ; *Daly vs. Morgan, et al.*, 69 *Md.*, 465 ; *Hale vs. City of Kenosha*, 20 *Wis.*, 599 ; *Hunsaker vs. Wright*, 30 *Ill.*, 146 ; *Glasgow vs. Rowse*, 43 *Mo.*, 479.

The terms "equal and uniform" and "according to value" preclude a discrimination as between those carrying on the same business. *City of New Orleans vs. Home Mutual Ins. Co.*, 23 *La. An.*, 449. It also precludes a specific tax on any species of property in any manner, the value of which is not uniform. *Bright vs. McCullough*, 27 *Ind.*, 223 ; *Sims vs. The Parish of Jackson*, 22 *La. An.*, 440 ; *State vs. Endom*, 23 *La. An.*, 663 ; *Livingston vs. The City Council of Albany*, 41 *Ga.*, 21.

A tax upon a railroad according to its length is unconstitutional. *State vs. Railroad Corporations*, 4 *S. C. Rep.*, 376.

A charge of $1 per mile laid upon each railroad track in the State is in violation of a constitutional provision requiring uniformity. *Railway Company vs. State*, 49 *Ohio*, 189.

This tax cannot be imposed under the authority to levy taxes for the support of the city government. The grant to a municipal corporation of power to levy taxes for municipal purposes, will not justify any other than the ordinary taxes. *Burroughs on Taxation,* 418 ; *Daly vs. Morgan, et al.,* 69 *Md.,* 467.

They can levy no taxes general or special upon the inhabitants or their property unless the power be plainly and unmistakably given or confirmed. *St. Mary's Ind. School for Boys vs. Brown,* 45 *Md.,* 311 ; *Cooley's Const'l Lim.,* 231 (*Ed. of* 1890, 227 ;) *Burroughs on Taxation,* 418.

This ordinance by imposing this specific tax, in effect determines the value of the property—that is, it assumes that all of this class of property is of the same value. This renders it void in any event. The Legislature cannot by law make or determine the value of property for taxation. *People vs. Hastings,* 29 *Cal.,* 449 ; *Burroughs on Taxation, chap.* 12, *p.* 288.

A legislative enactment making or determining the value of property for taxation would be the blending of the legislative and judicial functions, and also would deprive the property owners of due process of law and giving them no opportunity to be heard in the matter. As to due process of law as viewed by the Courts of Maryland, see *Ulman vs. Mayor, &c., of Baltimore, et al.,* 72 *Md.,* 587 ; *State vs. Rowe,* 72 *Md.,* 548 ; *Commissioners of Easton vs. Covey,* 74 *Md.,* 263.

These ordinances injuriously discriminate against the appellant and others that may be similarly situated, and encourage monopolies already existing.

A municipal corporation cannot create a monopoly. *Sayre Borough vs. Phillips,* 148 *Penn. St.,* 482.

A State cannot by law create a monopoly in the telegraph business. *Pensacola Tel. Co. vs. Western Union Tel. Co.,* 69 *U. S.,* 1.

The State cannot confer upon a municipality powers which the State does not possess. *Sayre Borough vs. Phillips*, 148 *Penn. St.*, 482. See *Ex parte Frank*, 52 *Cal.*, 606 ; *Conshohocken vs. Fennel*, 5 *Pa. Co. Ct. Rep.*, 65 ; *Easton vs. Easton Beef Co.*, 5 *Pa. Co. Ct. Rep.*, 68 ; *Yick Wo vs. Hopkins*, 118 *U. S.*, 373 ; *Henderson, et al. vs. Mayor of N. Y., et al.*, 92 *U. S.*, 259 ; *Chy Lung vs. Freeman, et al.*, 92 *U. S.*, 275 ; *Ex parte Virginia*, 100 *U. S.*, 339 : *Neal vs. Delaware*, 103 *U. S.*, 370; *Soon Hing vs. Crowley*, 113 *U. S.*, 703.

These ordinances discriminate against the property of defendant in imposing the taxes. This pole tax is in addition to the amount of taxes imposed upon the property of other citizens and corporations. *Charlotte, Col. and Aug. Railroad Co. vs. Gies*, 142 *U. S.*, 391.

These ordinances are in violation of the Constitution of the United States and the laws of Congress relating to the regulation of interstate commerce and the protection of property. *Pensacola Telegraph Company vs. Western Union Telegraph Company*, 96 *U. S.*, 11; *Western Union Tel. Co. vs. Texas*, 105 *U. S.*, 464.

" The property of a telegraph company situated within a State may be taxed by the State, as all other property is taxed; but its business of an interstate character cannot be thus taxed." *Leloup vs. Port of Mobile*, 127 *U. S.*, 640 ; *Charleston vs. Postal Telegraph Cable Co.*, 9 *R. R. & Corporation Law Jur.*, 129 ; *Bradford vs. Postal Tel. Cable Co.*, 11 *R. R. & Corporation Law Jur.*, 54.

This tax or claim is a restriction upon the use of the United States post roads. *Article 1, section 8, sub-section 7 of the United States Constitution* ; *Western Union Teleg. Co. vs. Attorney General of Massachusetts*, 125 *U. S.*, 530-554.

This tax or claim is a restriction upon an agent of the national government without authority of Congress. *United States Constitution, Article 1, section 8, sub-*

*section* 18 ; *Ward vs. Maryland,* 12 *Wallace,* 427 ; *Telegraph Company vs. Texas,* 105 *U. S.,* 460.

This license exaction is an abridgment of the rights, immunities and franchises of the Postal Telegraph Cable Company's charter in the free use of the post roads of the United States and of the State of Maryland, under the laws thereof, in violation of the laws of Congress, and of the Fourteenth Amendment of the United States Constitution and United States Rev. Statutes, sec. 1977. *Pembina Consol. Silver Mining and Mill. Co. vs. Pennsylvania,* 125 *U. S.,* 181-190 ; *Minnesota vs. Barber,* 136 *U. S.,* 313 ; *Robbins vs. Shelby County Taxing District,* 120 *U. S.,* 489; *Norfolk and Western Railroad Co. vs. Pennsylvania,* 136 *U. S.,* 114-118 ; *Telegraph Co. vs. Texas, supra* ; *Crutcher vs. Kentucky,* 141 *U. S.,* 47-62; *Lyng vs. Michigan,* 135 *U. S.,* 161-166.

The specific tax upon telegraph poles, as such, without regard to size, height, or material of which they are composed, and physical condition and extent of business, is unequal. The Court will take judicial notice that all telegraph companies are not equal in extent, kind of property and amount of business, &c., yet the same amount of tax is imposed on each and every telegraph company by this ordinance. *Pacific Express Co. vs. Seibert,* 142 *U. S.,* 339 ; *Pickard vs. Pullman Southern Car Co.,* 117 *U. S.,* 38-51 ; *Tennessee vs. Pullman Southern Car Co.,* 117 *U. S.,* 51 ; *Harman vs. Chicago,* 147 *U. S.,* 396 ; *Minot vs. Phil., Wilm. & Balto. R. R. Co.,* 2 *Abb. U. S. Rep.,* 323.

This tax or claim, and the manner of creating it, or any statute similar to it, is against the public policy of the United States.

If the city of Baltimore can do this, every other city and borough and municipality can impose a like tax or charge without limit as to amount, and any State can make laws of like nature and effect without any restraint, and would

vie with each other to see who could get most revenue in that manner.    *Welton vs. State of Missouri*, 91 *U. S.*, 275; *Passenger Cases*, 7 *Howard*, 463 ; *McCulloch vs. State of Maryland*, 4 *Wheat.*, 431.

*William S. Bryan, Jr., City Solicitor*, (with whom was *Thomas G. Hayes, City Counsellor*, on the brief,) for the appellee.

The Mayor and City Council of Baltimore have power, under the Act of 1890, ch. 370, " to regulate the use of the streets of the city * * * by telegraph, telephone and other poles."

Under this power, the municipality has been decided to be authorized to permit iron railway tracks to be laid on the streets of the city by street railway companies.    *Koch, et al. vs. North Avenue Railway Co.*, 75 *Md.*, 229; *North Balto. Pass. Railway Co. vs. North Avenue Railway Co.*, 75 *Md.*, 239 ; *Lake Roland Elevated Railway Co. vs. Mayor, &c., of Baltimore*, 77 *Md.*, 352.

The right of a city to charge a reasonable rental for the use of its streets was recognized by the Supreme Court of the United States in the case of *St. Louis vs. Western Union Tel. Co.*, 148 *U. S.*, 92, and 149 *U. S.*, 465.

BRYAN, J., delivered the opinion of the Court.

On the twentieth of April, 1893, the Mayor and City Council of Baltimore passed an ordinance which imposed a tax of two dollars on each telegraph, telephone, electric-light or other pole, which should be used in any of the streets, lanes or alleys of the city.    But the ordinance excepted trolley poles, which were used exclusively for stringing thereon wires for use in the propulsion of street passenger cars by electricity.    The Postal Telegraph Cable Company used and maintained five hundred and nine tele-

graph poles in the public streets of Baltimore, but refused
to pay the tax on them.  A suit was brought by the Mayor
and City Council to recover the amount due according to
the terms of the ordinance.  The Telegraph Company, in-
stead of pleading to the declaration, filed an answer, com-
posed of twenty-five sections.  The plaintiff demurred, and,
by consent of counsel, a *pro forma* judgment was entered,
sustaining the demurrer, and determining that the plaintiff
should recover the amount of the tax.

The answer filed by the defendant seems to be framed
on the model of equity proceedings.  Both in form and sub-
stance it is in absolute disregard of the practice prevail-
ing in this State, and was necessarily held bad on demurrer.
But as the object of this suit is to determine the validity
of the ordinance in question, we shall express our opinion
upon it, without regard to errors in practice and procedure.
We shall assume (as is undoubtedly the case) that the de-
fendant is a corporation under the laws of New York; and
that it is engaged in operating telegraph lines over the
post roads of several States of the Union, by making tele-
graphic communications for commercial and other pur-
poses; and that it has accepted the provisions of the Act
of Congress of July, 1866 (title 65 of U. S. Revised Statutes),
relating to the occupancy of post roads; and that it is en-
titled to the privileges conferred by that Act.  It has been
decided by the Supreme Court of the United States that
telegraphic communication between the different States
is a species of interstate commerce, and that it is, there-
fore, within the control of Congress.  The telegraph com-
panies which have accepted the provisions of the Act of
1866 are entitled to use the post roads of the United States
for the operation of their lines.  The streets of the city
of Baltimore are post roads, and in this capacity are sub-
ject to this Act of Congress.  But it cannot be supposed
that any power is conferred upon a telegraph company to
use the streets without compensation.  The Supreme Court

has decided what the right to use a post road means. It has said that this Act "gives no foreign corporation the right to enter upon private property without the consent of the owner and erect the necessary structures for its business; but it does provide, that whenever the consent of the owner is obtained, no State legislation shall prevent the occupation of post roads for telegraph purposes by such corporations as are willing to avail themselves of its privileges. * * * These (meaning post roads) are all within the dominion of the national government to the extent of the national powers, and are, therefore, subject to legitimate congressional regulation. No question arises as to the authority of Congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made. The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized. State sovereignty under the Constitution is not interfered with. Only national privileges are granted." *Pensacola Telegraph Company vs. Western Union Telegraph Company*, 96 *United States*, 1. It is not contended on the part of the plaintiff that any State authority can prevent or hinder interstate commerce, or that it can tax the receipts derived from it, or that it can require a license for carrying on the business, or the payment of a sum of money for such license. The city ordinance does not exclude the telegraph company from the use of the streets as post roads; on the contrary, it recognizes such use, and exacts compensation therefor. The question arises whether such compensation can be lawfully demanded. The power of the Mayor and City Council of Baltimore over the streets cannot be regarded as within the region of debate. By legislative enactment, by long continued usage, and by repeated decisions of our Courts, it has been determined that it has full and complete con-

trol over the streets and highways of the city. The Act of 1890, chapter 370, declared that it should have power to regulate the *use* of the streets by telegraph, telephone, electric-light and other wires and poles; and that it might require the wires to be placed under ground. It may permit the erection of poles, determine where they may be placed, and upon what terms they may be used. The erection of a pole is the appropriation of a portion of a street, and the entire exclusion of the public from the use of it. It is necessarily to some extent an obstruction, and under some circumstances it may be a great public inconvenience. The Telegraph Company has not the semblance of a right to appropriate any portion of the streets in this way. It may be suggested that it might acquire such right by condemnation. We shall not discuss this question. The assertion of such a pretension would be regarded as offensive in the highest degree, and would call forth great opposition. If the question should ever be presented to the Courts, we trust that it may be temperately and dispassionately discussed, and wisely and justly decided. As the matter now stands, the consent of the Mayor and City Council must be obtained for the use of the poles. It would not be right to clog this consent with unjust and unreasonable conditions, such as would manifest a purpose to prevent the transaction of the interstate business of the Telegraph Company, or to impede, oppress and embarrass it, or to make a discrimination against it in favor of some rival company. The privilege of using the poles is granted on the payment of the sum of two dollars per annum for each pole. This is less than seventeen cents a month. Baltimore is a large and populous city. In the localities desirable for telegraph offices the sidewalks are frequently thronged by large numbers of people, and the driveways so closely blocked with vehicles, that it is a matter of peril and difficulty to cross from one side of the street to the other. In many other parts of the city the

crowding of the streets is sometimes very great. It is a matter of much importance to preserve space for public convenience. If we take as a standard the rental value of ground fronting on public streets, we will see that seventeen cents a month for the space covered by a telegraph pole is a very small fraction of the value of its occupation; and it is a vastly smaller fraction of the compensation due for the inconvenience caused to occupiers of houses in the vicinity, and to persons using the streets in the ordinary methods of travel. The Mayor and City Council, however, with a wise and liberal forecast have foreborne to place burdens on industries and enterprises, which accompany and increase the growth and prosperity of the city. In our opinion the tax on these poles is reasonable and moderate. We, of course, are conclusively bound by the decision of the Supreme Court in *St. Louis vs. Western Union Telegraph Company,* 148 *United States,* 92. In that case the validity of a tax was in question, which had been imposed by the city of St. Louis on telegraph poles of the Western Union Company. The Court overruled the suggestion that the Act of Congress which granted the use of the post roads, conferred on telegraph companies the unrestricted right to appropriate public or private property; and affirmed that the franchise or privilege was to be exercised in subordination to public and private rights. It held that the tax was valid; and said, in speaking of the public streets: " While for purposes of travel and common use they are open to the citizens of every State alike, and no State can by its legislation deprive the citizens of another State of such common use, yet when an appropriation of any part of this public property to an exclusive use is sought, whether by a citizen or corporation of the same or another State, or a corporation of the national government, it is within the competency of the State, representing the sovereignty of that local public, to exact for its benefit compensation for this exclusive appropriation. It matters

not for what that exclusive appropriation is taken; whether for steam railroads or street railroads, telegraphs or telephones; the State may, if it chooses, exact from the party or corporation given such exclusive use pecuniary compensation to the general public for being deprived of the common use of the portion thus appropriated." The tax was five dollars per annum for each pole, and it was maintained by the Telegraph Company that it was unreasonable, unjust and excessive. As the judgment in favor of the Telegraph Company was reversed on other grounds, the Court said that the question might be passed for further investigation on the new trial. It also said: *"Prima facie,* an ordinance like that is reasonable. The Court cannot assume that such a charge is excessive, and so excessive as to make the ordinance unreasonable and void; for, as applied in certain cases, a like charge for so much appropriation of the streets may be reasonable." On a motion for reargument, the Court reaffirms the validity of the tax. In speaking of the power to regulate the use of the streets, which was vested in the city of St. Louis under its charter, it said: "If it should see fit to construct an expensive boulevard in the city, and then limit the use to vehicles of a certain kind, or exact a toll from all who use it, would that be other than a regulation of the use? And so it is only a matter of regulation of use when the city grants to the telegraph company the right to use exclusively a portion of the street, on condition of contributing something towards the expense it has been to, in opening and improving the street. Unless, therefore, the telegraph company has some superior right which excludes it from subjection to this control on the part of the city over the streets, it would seem that the power to require payment of some reasonable sum, for the exclusive use of a portion of the streets, was within the grant of power to regulate the use. That the company gets no such right from the general government is shown by the opinion heretofore deliv-

ered, nor has it any such from the State." *St. Louis vs. Western Union Telegraph Co.,* 149 *U. S.,* 470.

The judgment below must be affirmed.

*Judgment affirmed.*

(Decided 21st June, 1894.)