### CITY OF MEMPHIS v. POSTAL TELEGRAPH & CABLE CO.

(Circuit Court of Appeals, Sixth Circuit. November 9, 1908.)

Nos. 1,811, 1,812, 1,813, 1,814.

1. APPEAL AND ERROR (§ 1022*)—REVIEW—FINDINGS OF MASTER APPROVED BY COURT.

Where a cause is referred to a master, to take proof and to report on certain questions, and this is done, and the court concurs in the conclusions of the master, they are to be taken as presumptively correct, and should be permitted to stand, unless some obvious error or mistake has intervened, either in the law or in the consideration of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4015; Dec. Dig. § 1022.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. TELEGRAPHS AND TELEPHONES (§ 10\*)—USE OF STREETS—RENTALS.**

The finding of a master that a charge by a city of $3 per pole as rental for the occupancy and use of its streets by telegraph companies was reasonable *held* sustained by the evidence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.\*

Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telegraph & Telephone Co. v. City of Richmond, 44 C. C. A. 155.]

Appeals from the Circuit Court of the United States for the Western District of Tennessee.

See, also, 139 Fed. 707.

J. L. McRee, for city of Memphis.
R. A. Greer, for Western Union Telegraph Co.
H. D. Minor, for Postal Telegraph & Cable Co.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. These cases were filed in Shelby county, Tenn., and on account of diversity of citizenship removed to the court below. They were brought to collect the rentals per pole charged by the city of Memphis for the occupancy and use of its streets. The court below sustained demurrers and dismissed the suits on the ground the ordinances under which the rentals were laid were invalid. We reversed these decrees, holding the ordinances valid, but leaving unsettled the questions whether the rental of $2 per pole from 1896 to 1901, and $3 per pole since 1902, were respectively unreasonable and excessive.

The cases were remanded, with the opinion in City of Memphis v. Postal Tel. & Cable Co., 145 Fed. 602, 76 C. C. A. 292, for the purpose of referring them to a master to take proof and report upon the questions whether the rentals were unreasonable and excessive. The master took proof and reported, sustaining the rentals under each ordinance, that of 1894 and that of 1902, being $2 from 1896 to 1901, inclusive, and $3 since 1902. Exceptions were taken. The court below sustained the exception to the rental of $3 per pole fixed by the ordinance of 1902 as unreasonable and excessive, but overruled that to the rental of $2 per pole as fixed by the ordinance of 1894, and rendered judgments accordingly.

We have given careful consideration to the reargument of the fundamental questions whether the city had authority to pass the ordinances of 1894 and 1902, and we are constrained to stand by the conclusion, which is set out quite clearly and with sufficient authority, in the opinion in 145 Fed. 602, 76 C. C. A. 292. This leaves the questions referred to the master, upon which he took proof and reported, the only ones necessary to consider, namely, whether the rental of $2 per pole per annum from 1896 to 1901, inclusive, and that of $3 per pole per annum since 1902, were unreasonable and excessive. The master sustained both of these rentals as reasonable when laid, but held that the rental of $2 per pole

---

was inadequate, after the ordinance fixing the rental at $3 per pole was passed. The court, on the other hand, held that the rental of $2 per pole was reasonable, but that the rental of $3 per pole was unreasonable and excessive.

The situation, therefore, as it stands at present, is this: The court below and the master agree in concluding that the rental of $2 per pole per annum, as fixed by the ordinance of 1894, was reasonable and not excessive; but the court below disagrees with the master by holding that the rental of $3 per pole per annum, as fixed by the ordinance of 1902, amending that of 1894, was unreasonable and excessive. It is left to this court to settle the conflict, and we are clear in the opinion that it should be settled in favor of the conclusions reached by the master. The increase of the rental in the second ordinance might well be justified by general conditions. After all, a fair estimate of the rental per pole which should be charged per annum, under the circumstances, seems to have been a matter of opinion. The witnesses were not permitted to take into account any element of value resulting from the consideration that the occupation and use of the poles by the company was either a privilege or a license. This appears to have resulted from the fact that the right being exercised was proprietary in its nature, and for this right a rental should be charged. But at the same time that the witnesses were restricted in the way we have indicated, their attention was not directed to the fact that the proprietary right of the telegraph company was not restricted to the occupation and use of the ground where a pole stood merely; and you could not properly limit the value of that occupation and use by the size of the pole. The pole carried cross-arms, and the cross-arms insulators and wires. The cross-arms, insulators, wires, and cables enjoy a part of the proprietary right of the company, as well as the poles.

In the case of St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, an ordinance came before the Supreme Court imposing the sum of $5 per annum for each telegraph or telephone pole for the privilege of using the streets, alleys, and public places. The court, after indicating the view that the city of St. Louis could exact a charge for the use of its streets, set the case for rehearing (149 U. S. 465, 13 Sup. Ct. 990, 37 L. Ed. 810), upon the question "whether the city of St. Louis has such interest in and control over the streets, alleys, and public places within its limits as authorizes it to impose upon the telegraph company a charge in the nature of a rental for the exclusive use of portions thereof in the manner stated." In the second opinion by Mr. Justice Brewer, speaking for the court, 'the rental was sustained. These cases were decided in March and May, 1893. Afterwards, in June, 1894, in the case of Postal Telegraph Company v. Mayor, etc., of Baltimore, 79 Md. 502, 29 Atl. 819, 24 L. R. A. 161, the right of Baltimore to impose a tax of $2 per annum for each telegraph, telephone, electric light, or other pole used in any of the streets of Baltimore, came before the Court of Appeals

of Maryland and was sustained.  The cases in the Supreme Court are cited and followed in the opinion.  This case in its turn came before the Supreme Court in Postal Tel. & Cable Co. v. Baltimore, 156 U. S. 210, 15 Sup. Ct. 356, 39 L. Ed. 399, and was affirmed on the authority of St. Louis v. Western Union Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380.  The charge of $5 per annum for each pole is referred to in the opinion.  79 Md. 513, 29 Atl. 819, 24 L. R. A. 161.

In the case of Western Union Tel. Co. v. New Hope, 187 U. S. 419, 23 Sup. Ct. 204, 47 L. Ed. 240, an ordinance passed by the borough of New Hope, Pa., imposing an annual license fee of $1 per pole and $2.50 per mile for wire on the telegraph, telephone, and electric light poles and wires within its limits, was assailed on the ground that the charge was excessive.  The Supreme Court met this objection by pointing out that all the courts in Pennsylvania, the common pleas, superior, and Supreme, had held it to be reasonable.  It cited the St. Louis Cases in 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, and 149 U. S. 465, 13 Sup. Ct. 990, 37 L. Ed. 810, as showing that a license fee was not a tax either upon the property of the company or upon its transmission of the messages, upon its receipts from such transmission or upon its occupation or business, but was a charge in the enforcement of local governmental supervision, and as such was not in itself obnoxious to the clause of the Constitution relied on.

In the case of Atlantic & Pacific Tel. Co. v. Philadelphia, 190 U. S. 160, 23 Sup. Ct. 817, 47 L. Ed. 995, the right of the city of Philadelphia to impose and collect certain license fees against the company was sustained, and the court takes great care to distinguish between those exactions which may and those which may not be laid under the federal Constitution.  It was sustained as a reasonable license fee for the enforcement of local governmental supervision.  190 U. S. 164, 23 Sup. Ct. 817, 47 L. Ed. 995.

The rule is settled that where a cause is referred to a master to take proof and to report upon certain questions, and this is done, and the court concurs in the conclusions of the master, they are to be taken as presumptively correct, and should be permitted to stand, unless some obvious error or mistake has intervened, either in the application of the law or in the consideration of the evidence.  Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649.  In the present case the court below overruled the master with respect to the $3 rental.  It is, then, for us to say whether such rental is so unreasonable and excessive as to invalidate the ordinance of 1902, which we held to be valid unless overcome by the evidence in this case showing it unreasonable and excessive.  Medsker v. Bonebrake, 108 U. S. 66, 72, 2 Sup. Ct. 351, 27 L. Ed. 654.

Holding, as we do, that it was error in the court below to overrule the master with respect to the $3 rental, the judgments below are reversed, and the cases remanded for judgments in accordance with this opinion.