# THE POSTAL TELEGRAPH CABLE CO.

## *vs.*

# THE STATE ROADS COMMISSION.

*Post roads: State bridges; telegraph companies; rentals for exclusive use.   Landlord and tenant: money for occupation.*
*Appeals: second, in same cause; practice.*
*Pleadings: errors in—; waiver.*

Where a case, both in the lower court, and on appeal, was decided entirely upon questions presented by a demurrer to the declaration, the Court of Appeals, in a subsequent suit, between the same parties, and growing out of the same cause of action, may determine other questions not connected with the demurrer, without reviewing its former decision.          p. 246

Ordinarily, as between persons in the relation of landlord and tenant, the regular payment by the one, and the acceptance by the other, of money for an occupation implies some kind of tenancy.                                    p. 248

When the State is entitled to money for the use and occupation of public roads, it is proper for the suit therefor to be brought by the State Roads Commission.          p. 249

The Act of Congress empowering telegraph companies to use post roads does not give telegraph companies the right to make special use of a States' property in its roads, etc., without compensation.                                    p. 251

. A telegraph company for a number of years had been making a special use of a certain bridge, owned by a private corporation, and had been paying to the said corporation a certain annual sum therefor, how arrived at or under what arrangement was not shown; the State Roads Commission acquired the bridge from the corporation, with all its interests and rights therein, to be used as part of the State Roads System; in a suit by the State Roads Commission against the telegraph company for the use of the bridge, it was: *Held*, that the State was enti-

tled to receive compensation for the special use; and that the former sum paid by the telegraph company might be considered as evidence of what was the value of such special use.     p. 255

An agreement between counsel to waive all errors of pleading precludes the question as to whether the form of action itself was technically correct.                                   p. 254

*Decided December 16th, 1915.*

Appeal from the Superior Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Walter H. Buck* (with whom was *Watson E. Sherwood* on the brief), for the appellant.

*Leon E. Greenbaum,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is the second time this case has been before this Court. In *State Roads Commission* v. *Postal Tel. Co.,* 123 Md. 73, the judgment which had been entered for the Telegraph Company, after a demurrer to the declaration had been sustained, was reversed and a new trial awarded. After the case was remanded, the defendant, the present appellant, filed five pleas. There was joinder of issue on the first and second (which were the general issue pleas), and the third, fourth and fifth were demurred to. The demurrer having been sustained, the defendant filed three amended pleas, which were also demurred to, and the demurrer was sustained to each of them. An agreement was entered into between the attorneys which recited that the defendant de-

clined to further amend, and it was agreed "That the general issue pleas filed heretofore be stricken out and that all errors of pleading, if any, with respect to the said three special amended pleas as amounting to the general issue plea, and all other technical errors of pleading be and they are hereby waived." Judgment by default was entered and the damages were assessed by the Court at $191.50. From the final judgment rendered this appeal was taken.

The declaration is set out in full in the opinion in the former appeal. By Chapter 116 of Laws of 1910, a number of new sections were added to Article 91 of the Code, enlarging the powers of the State Roads Commission, which was created by Chapter 141 of the Acts of 1908, and by Section 32P (now Section 48 of Article 91 of Bagby's Code) it was authorized to acquire and maintain the Conowingo Bridge across the Susquehanna River for the purpose of connecting the system of State Roads in Harford and Cecil Counties. The case as now presented may be thus stated: The State Roads Commission on August 22nd, 1911, purchased that bridge. For some years before the purchase the appellant had regularly paid the Conowingo Bridge Company $95.75 every six months for the use thereof and continued to pay that sum up to July 1st, 1911. There is no allegation of an express contract or agreement in the *narr.* by which the appellant was to have the use of the bridge or was to make the semi-annual payments for any definite time, but it did in fact use the bridge and at least for the years 1906 to 1911, inclusive, made the semi-annual payments above spoken of for such use. No change has been made in the use of the bridge, but since the State Roads Commission purchased it the appellant has refused to pay anything, on the ground that it is now a free public bridge of the State and a portion and continuation of the State system of free public roads and highways, and it notified the State Roads Commission that after August 22nd, 1911, it would use it free from any demand or exaction of the plaintiff or any tolls or other charges

whatsoever.   Whether that notice was before or after the purchase is not clearly stated in the pleas.   In the second plea it is alleged that the company had accepted and was entitled to the benefit of the Post Roads Acts of Congress; that the roads leading to each end of the bridge were post roads, and that the defendant had maintained its structures over said roads to either end of the bridge prior to August 22nd, 1911, without payment of charges of any kind therefor; that immediately after the acquisition of the bridge by the plaintiff it became a public bridge of the State of Maryland, and as such a portion and continuation of the public roads of the State and of the Post Roads of the United States, and the defendant became entitled to construct, maintain and operate its lines of telegraph and to erect the necessary fixtures for sustaining the cords or wires of said lines over, upon and along said bridge.   It also relies on the Act of 1868, Chapter 471, Section 129, which is now Section 359 of Article 23 of the Code.   The plea admits the payment of the $95.75 every six months, but alleges that there was no express agreement or known understanding between the Bridge Company and the Telegraph Company.

It is contended by the Telegraph Company that the pleas present defenses which were not passed upon in the former case and which it claims preclude recovery.   There can be no doubt that any question not presented by the demurrer to the declaration, which was all that was before the Court on the prior appeal, can now be considered by us without requiring us to review our former decision.   It would oftentimes save the time of the courts as well as a useless expenditure of money by litigants, if some method of procedure could be adopted by which all defenses could be required to be presented in the first instance, except in very unusual cases, but we have not yet reached the millenium in legal procedure.   The brief filed in the other case by the present appellant began by stating that "for some years prior to the institution of this suit had an agreement with the Conowingo

Bridge Company, a private corporation, under which the appellee used the bridge across the Susquehanna River, connecting Harford and Cecil Counties, for the purpose of carrying its wires used in its said business of a Telegraph Company across the said river." But in the first amended plea (we will refer to the amended pleas as the first, second and third, although those which they amended were marked third, fourth and fifth), it is alleged that the wires were upon the bridge prior to August 22nd, 1911, "without any contract or express agreement with said Conowingo Bridge Company or known understanding of any kind other than as herein recited," and in the second "that said payments were exacted of and paid by said defendant without an express agreement or known understanding with said Bridge Company."

Just what is meant by the expression "known understanding," as used in the pleas, is not altogether clear, as the defendant would scarcely want to be understood as having no means of knowing why the sum of $95.75 was paid every six months to the Bridge Company, or how that sum was fixed, but the first plea does state that the defendant's wires, eleven in number, as stated in the plea, or twelve, as stated in an agreement of attorneys in the record, are strung above and along said bridge, and alleges that they, together with the necessary fixtures for sustaining them, are so removed from the traveled parts of the bridge as in no wise to interfere with the public use thereof. In a later part of the plea it is said: "That the consideration moving from said company to defendant for the payments made by defendant to it as aforesaid was the right to defendant to use said bridge structure for its corporate purposes free of any right of interference therewith by the State of Maryland or other parties, public or private," and it is then alleged that by such transfer to the plaintiff of said bridge the plaintiff's right to demand or collect from the defendant charges of any kind became limited to such charges, if any, by the Bridge Company as were due and owing by defendant to it on August 22nd,

1911, and that said grant did not give plaintiff the right to collect from defendant any other charges.

It must be admitted that when the case was formerly before us, we were led to believe by what the declaration alleged and by what the Telegraph Company said in its brief, that the arrangement between that Company and the Bridge Company was more definite than what is stated in the pleas. The declaration did not, however, allege that there was a contract or lease for a definite term, or that there was anything more than some arrangement between them by which the Telegraph Company, at the time of the purchase by the Commission and for a long number of years prior thereto, was and had been using the bridge with the consent of the Bridge Company, and that the Telegraph Company had been paying the Bridge Company "rentals and income for the use thereof, which said rentals and tolls had amounted from the year 1906 to 1911 to the sum of $95.75 semi-annually in each year, for which amount bills were regularly sent by the Conowingo Bridge Company to the defendant and paid by the defendant up to and including the installment due on the first of July, 1911." If we apply the ordinary rules applicable to landlord and tenant, that was sufficient to imply some kind of a tenancy, for the Telegraph Company was in possession of and using the bridge with the permission and consent of the Bridge Company, and was regularly paying at stated periods a fixed sum for such use. So if this case merely depended upon establishing that relation between those companies we could have no difficulty.

The question, however, is whether under the conditions set out in the pleas the appellees can recover. We do not regard it as an open question whether the appellees can recover if the State could. We said in *State Roads Commission* v. *Postal Tel. Co.*, 123 Md. 73, that: "The suit was instituted in the names of the members constituting the Board of the State Roads Commission 'for and on behalf of the State of Maryland.' If then the State is entitled to money due for

use of public roads, it was proper that the agency having charge and control of that department should bring suit in its behalf," etc. We will not, therefore, discuss that question, which was fully argued and considered on the prior appeal. The pleas do not present a different question in regard to that from what the demurrer to the declaration did.

So what we are now really called upon to determine is whether the State, if the suit had been brought in its name, could have recovered under the facts set out in the pleas. The case is a peculiar one in some respects, and at least some of the defenses set up by the appellant are wholly without merit. It is not easy to understand why a corporation, such as the appellant, should have been willing to pay and did pay for the use of a bridge, such as this, a definite and fixed compensation for a number of years, as long as the bridge belonged to a private corporation, but as soon as the State became the owner of the bridge by an expenditure of a large sum of money, should refuse to pay anything therefor, although its use of the bridge has not in any respect changed. If the Bridge Company were still the owner there could be no question about its right to recover, and in our judgment there can be no doubt about the right of the State to recover something in some kind of proceeding.

The case of *St. Louis* v. *Western Union Tel. Co.*, 148 U. S. 92, on which the decision of this Court in *Postal Tel. Co.* v. *Baltimore*, 79 Md. 502, was mainly based, and upon which the Supreme Court relied when it affirmed in 156 U. S. 210 the case in 79 Md., clearly sustains the right of the State to *compensation and stated grounds* upon which it can be recovered. After speaking of the use of streets of a city by the Telegraph Company and showing that its use is different in kind and extent from that enjoyed by the general public, the Court, in speaking of a ruling below that the charge was a privilege or license tax, said: "To determine this question, we must refer to the language of the ordinance itself, and

by that we find that the charge is imposed for the privilege of using the streets, alleys and public places, and is graduated by the amount of such use. Clearly, this is no privilege or license tax. The amount to be paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city—that which may properly be called rental. 'A tax is a demand of sovereignty; a toll is a demand of proprietorship.' " The Court also said: "Now, when there is this permanent and exclusive appropriation of a part of the highway, is there in the nature of things anything to inhibit the public from exacting rental for the space thus occupied? Obviously not. Suppose a municipality permits one to occupy space in a public park, for the erection of a booth in which to sell fruit and other articles; who would question the right of the city to charge for the use of the ground thus occupied, or call such charge a tax, or anything else except rental? So, in like manner, while permission to a Telegraph Company to occupy the streets is not technically a lease, and does not in terms create the relation of landlord and tenant, yet it is the giving of the exclusive use of real estate, for which the giver has a right to exact compensation, which is in the nature of rental." This Court in 79 Maryland quoted from that opinion where the Supreme Court, in speaking of the public streets, said: "While for purposes of travel and common use they are open to the citizens of every State alike, and no State can by its legislation deprive the citizens of another State of such common use, yet when an appropriation of any part of this public property to an exclusive use is sought, whether by a citizen or corporation of the same or another State, or a corporation of the national government, it is within the competency of the State, representing the sovereignty of that local public, to exact for its benefit compensation for this exclusive appropriation. It matters not for what that exclusive appropriation is taken, whether for steam railroads or street railroads,

telegraphs or telephones, the State may if it chooses, exact from the party or corporation given such exclusive use, pecuniary compensation to the general public for being deprived of the common use of the portion thus appropriated." In the late case of *Western Union Tel. Co.* v. *Richmond,* 224 U. S. 160, JUSTICE HOLMES said: "The inability of the State to prohibit the appellant from getting a foothold within its territory, both because of the statute (referring to the Post Roads Act of Congress) and of its carrying on of commerce among the States, gives the appellant no right to use the soil of the streets, even though post roads, as against private owners, or as against the city or State, where it owns the land." See also *Dillon on Municipal Corporations* or (5th Ed.), section 1220, where the question is discussed and many authorities cited.

It can not be doubted that this company has an exclusive use of a part of this bridge. It is true that according to an agreement of counsel filed in the case, the wires are carried on wooden cross-arms, which are attached to metal uprights bolted to the girders on top of the bridge, but the eleven or twelve wires are carried on them for a distance of 1336 feet, and although the agreement does not show the weight of the wires and the fixtures, it must be appreciable and they must require additional expense in the supervision of the bridge by the commission. Wires will break and sometimes are very dangerous to the traveling public, and it will be the duty of the commission or other representatives of the State to see that those using the bridge are protected from such danger. Then the necessary repairs and changes from time to time may make it more dangerous to those passing under them and will have a tendency to obstruct the bridge more than the ordinary use of it would. There are probably other special uses which might be mentioned, but however that may be, we can be assured that there must have been some good reason to induce the appellant to pay what it did pay to the Bridge Company year after year.

In *Beaver County* v. *C., D. & P. Tel. Co.,* 219 Pa. 340, 68 At. 846, the Telegraph Company had a contract with the Bridge Company under which it could place its telephone cables and wires, with necessary fixtures, on the bridge for the sum of $50 a year and furnishing the Bridge Company with two telephones. During the term of the contract the county condemned the bridge and made it a public bridge. After that the Telegraph Company refused to remove its lines from the bridge or pay anything to the county for the privilege of maintaining them there. The county filed a bill in equity to require it either to remove its wires, cables and fixtures from the bridge, or pay a reasonable rental or compensation for its use and to enjoin it until such rental or compensation be fixed. The bill was dismissed, "without prejudice of the plaintiff to institute proceedings at law to recover damages to which the plaintiff may be entitled for the occupancy of the bridge." The Court said: "In the present case the Telegraph and Telephone Company laid its line upon the bridge under agreement with the corporation that was then the owner. It was rightfully upon the structure when it became a county bridge. We agree with the view taken by the trial judge that as matters now stand, in case the defendant company refuses to pay a proper rental, the remedy is not in equity to enforce the removal of its lines of wire, cables and attachments, which were lawfully placed upon the bridge, but it is in the right of the plaintiff to bring an action at law to recover the damages for the use of the bridge during the time for which no compensation has been paid. We can see no difference in principle between the use made of the bridge by a street railway company and that which is appropriated by the Telephone Company. Its wires, cables and appliances are carried upon, and supported by, the bridge structure, as long as its use is required." In *Beaver County* v. *B. V. Traction Co.,* 229 Pa. 565, 79 At. 161, a trolley company was using three bridges which belonged to private corporations. The county condemned them and made them free. The exact arrangements

with the Bridge Companies were not shown but it was agreed that when they were condemned the defendant was lawfully using them "under arrangements theretofore made with the Bridge Company." It was said, quoting for convenience, from the syllabus in the Atlantic Reporter, that "A trolley company operating its street cars over a county bridge enjoys a special use, different in kind and extent from that of the general public, for which the county may exact rent, including therein a reasonable proportion of the cost incurred for necessary repairs to the bridge," and also that "Where a county by condemnation obtained bridges used by a trolley company under agreement with the private owners, and the trolley company afterwards contracted with the county for use of the bridges at a certain rental for a term of years, and after expiration of such term continued to use the bridges, but refused to pay rental therefor, the county can recover for such use after termination of the contract period." See also *Point Bridge Co.* v. *P. & W. E. Ry. Co.,* 230 Pa. 289, 79 At. 567; *Point Bridge Co.* v. *P. Ry. Co.,* 240 Pa. 105, 87 At. 614; *Mon. Bridge Co.* v. *P. Ry. Co.,* 240 Pa. 121, 87 At. 619, where different phases of such questions are considered, but the right to some kind of compensation is sustained. It is said by the appellant that those decisions were in regard to intrastate companies, but there can be no difference in principle inasmuch as the Supreme Court of the United States has over and over again applied such principles to interstate companies.

Conceding that ordinarily a suit in assumpsit for use and occupation does not lie, unless the relation of landlord and tenant between the plaintiff and defendant be established, it is sufficient to say that this is not technically such a suit. As said in the case in 148 U. S., *supra,* the relation of landlord and tenant does not technically exist, but assuming that it is not strictly speaking rent, the cases sustain the right to recover compensation for such exclusive use of a portion of the highways, which may be said to be in the nature of a rental.

The appellant was not a trespasser in going upon the bridge, as it went with the consent of the then owner, and having that consent it was authorized by the laws of Maryland and the Acts of Congress to maintain its lines there. The remedy for the refusal to pay compensation against one who continues to occupy premises which he entered lawfully and then refuses to pay, is not as it is in ordinary cases to eject such party from the premises, and it may be conceded that the appellant can not be ejected from this bridge, but by reason of that very fact the State would have no remedy unless it can recover compensation in some shape for the use of the bridge. Whether or not this *narr.* is in such technical form as it ought to be to recover such compensation is not material, for, as we have seen, the parties have agreed that "all errors of pleading, if any, with respect to the said three special amended pleas, as amounting to the general issue plea, and all other technical errors of pleading, be and they are hereby waived,"—it being, as we understand, the desire of the parties to have the question whether the appellees can recover compensation definitely determined. We might add, however, that inasmuch as the appellant can not be treated as a trespasser, the appellees could not well be required to bring a technical action of trespass.

It will be seen by reference to the cases referred to that, while they may differ somewhat in the use of terms—calling it "rent," "rentals," "damages," etc., it is generally held that the State, county or municipality (if of course the county or municipality has had the authority given it by the State) is entitled to reasonable compensation for a special use of highways and public places, unless it is estopped by reason of the grant of some franchise or some contract which it can not impair or change, and no Court has been more emphatic in its approval of the doctrine than the Supreme Court of the United States, so long as the State has not interfered with the foreign corporations or the ones subject to Federal control in its proper use of the public highways of the State.

We are, however, of the opinion that in the absence of some contractual relations shown to exist between the appellant and the appellees, the latter were not necessarily entitled to recover the same amount that the Telegraph Company had been paying the Bridge Company, although it was convincing evidence of what was reasonable compensation for the use of the bridge which is now precisely the same as it was before the purchase. As the Supreme Court said in *Western Union Tel. Co.* v. *Richmond, supra*: "After the appellant, as is found, has paid the charges without complaint for many years, it would require something more than a mere protest now to induce us to find it unreasonable." See also 148 U. S., *supra*. But in this case no question is presented to us as to the reasonableness of the sum claimed, as the appellant denied all liability. The judgment can not therefore be disturbed by reason of the amount recovered, as that is in no proper way before us; but we are of the opinion that the appellant can hereafter question the amount, if it be true as set out in the pleas that it was not holding under a lease or some definite contract or agreement which has not expired, although it may not be out of place to apply to this case the language of the Court in *Beaver County* v. *Telegraph Co., supra*. It said: "There should be no more difficulty in agreeing upon a fair rental, now that the county is the owner of the bridge, than there was when it belonged to the Ohio River Bridge Company."

We have not thought it necessary to discuss the question whether the fact that the bridge was a part of a highway which was a post road, or that the appellant was an interstate Telegraph Company subject to and entitled to the benefit of the Post Roads Acts of Congress. Our own case of *Postal Tel. Co.* v. *Baltimore*, 79 Md. 502, and the Supreme Court decisions referred to in that case and by us above, as well as many others that might be cited, are conclusive of that question. There is no attempt to interfere with the use of the bridge by the appellant as it has been using it, but the

State, through the agency representing it, does ask and demand that it be at least fairly dealt with, and that compensation be paid it for the special use the defendant makes of the bridge. It can not be doubted, as said by JUDGE CONSTABLE in the opinion in 123 Md., that the State was required to pay the Bridge Company for the income it was deriving from the appellant for the use of the bridge.

Nor is what is now Section 359 of Article 23, being the Act of 1868, Chapter 471, Section 129, an obstacle to recovery. That Act was in force when the case in 79 Md. was decided, and regardless of whether it was intended to or did apply to foreign corporations, it simply provided that Telegraph Companies could construct their lines as therein stated "without their being deemed a public nuisance or subject to be abated by any private party." That certainly can not be construed to give the right to such a corporation to make special use of the State's property without compensation.

We gave the Chesapeake & Potomac Telephone Company and the American Telegraph & Telephone Company leave to file a brief in this case, but we did not intend thereby to decide their cases further than what we say in deciding the one before us, as the brief rather seems to indicate it was thought we would do. We were left very much in the dark as to what the arrangements between the Bridge Company and the Postal Telegraph Company were, and if there is further litigation it should be more definitely established, if possible, so as to show whether there was such contractual relations between them as passed to the appellees as assignees, but we have no information as to the circumstances under which the two other companies referred to acquired any rights they may have to the use of the public highways of the State, or what they are. We can not therefore attempt to pass on them.

It follows from what we have said that the judgment will be affirmed.

*Judgment affirmed, the appellant to pay the costs.*