# THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY

## *vs.*

# THE STATE ROADS COMMISSION.

*State Roads Commission: no right to charge telephone company for using state roads.*

A charge made by the State, or under its authority, for the erection or maintenance of telegraph or telephone poles, on the public highways, is not an additional tax upon the company, but is in the nature of a rental for the proportion of a part of the public streets or highways.                                    p. 198

The general provisions in the incorporation laws, accorded telegraph or telephone lines, to construct their lines on public highways, does not place the State under any obligation to permit an individual company, availing itself of such privilege, to occupy and use the highways without making compensation therefor.                                                    pp. 197-198

Where a telephone company, in its bill for an injunction to restrain the State Roads Commission from making a charge for its permission to construct conduits and manholes, in a State highway, admits that it was offered the permission without payment of the charges to which it objected and without limit as to the duration of the privilege, a proposal by the Commission to reserve the right to make such charges in the future gives no ground for issuing the injunction.                                    p. 202

The State, by the Act creating the State Roads Commission, has not delegated to it the authority to charge telephone companies for using the state roads for the construction or maintenance of their wires, either above or below the ground.
pp. 201-202

*Decided January 16th, 1918.*

Appeal from Circuit Court No. 2 of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Shirley Carter* (with *Bernard Carter & Sons* on the brief), for the appellant.

*Albert C. Ritchie, the Attorney-General,* and *Ogle Marbury, the Assistant Attorney General,* for the appellee.

URNER, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the Chesapeake and Potomac Telephone Company of Baltimore City for the purpose of having the State Roads Commission of Maryland restrained from interfering with the construction and use of conduits, for the accommodation of the company's telephone wires, in one of the State highways under the control of the Commission, without payment by the company for such user, and praying that the Commission be decreed to be without authority to make any charge against the company for the use of any of the State roads for its lines, either above or below the surface of the ground, except as to the payment of the expense of restoring the highways to their former condition when disturbed in the construction or renewal of any part of the telephone system.

It is alleged in the bill that the plaintiff company was incorporated in 1884 under the general incorporation laws of Maryland, which authorize it to construct its lines along any of the highways of the State, either above or beneath the surface, and that in the exercise of such power the plaintiff has constructed and now owns and operates an extensive and highly valuable system of telephone poles, conduits and wires on and under the State highways, on account of which it is required to pay taxes, on the assessed value thereof, to the State and to the respective cities and counties in which the lines are located, in addition to taxes on its capital stock

and a franchise tax of two per cent annually on its gross receipts. The charter powers of the plaintiff were accepted and its use of the public highways for the purposes described was begun and has continued, the bill avers, without any payment being required or proposed for that privilege until the latter part of the year 1913, when the State Roads Commission imposed a charge of twenty-five cents per annum for each pole thereafter erected by any telephone or telegraph company on any of the roads under the control of the Commission. The exaction of such a charge is alleged to be unauthorized by the statutes defining the powers of the Commission, but it is stated that the charge has been paid, though under protest, by the plaintiff, because of the urgency of the occasions when new poles were to be erected, and the refusal of the Commission to issue a permit for the work without such payment. It is further alleged that in the early part of the year 1916 the plaintiff applied to the Commission for a permit to lay 128 feet of six duct conduit, with the necessary manhole, along and under the side of the Bel Air Road, a highway under the Commission's control, upon a part of which a pole line of the plaintiff was already located, and that, after some intermediate communications, which are recited in the bill, in relation to a contemplated charge of $10.26 for the privilege, limited to a period of twenty-five years, to which charge and time limit the plaintiff objected, it was finally proposed by the Commission that a permit for the construction and use of the conduit and manhole be issued, without any payment being required or any restriction imposed as to the duration of the user, but without prejudice to the future exercise of such right as the Commission might have to impose the charge in controversy. The permit offered on this basis was declined by the plaintiff company, and being unable to obtain one without such a reservation, it filed the present bill to have the question in dispute judicially determined.

The theory of the bill is that the State Roads Commission is not in terms empowered to charge the telephone company

for the use of the public highways in the construction and maintenance of its lines, and that no such authority could have been validly conferred. It is contended that the provisions of the general incorporation law under which the telephone company was formed, and the acceptance by it of the rights and privileges thereby granted, constituted a contract between the State and the Company which would be unconstitutionally impaired by the imposition of a charge for the use of the franchise. The further theory is advanced that the enforcement of such a charge would deprive the company of its property without due process of law, contrary to the State and Federal Constitutions, and would be an unlawful interference with inter-state commerce.

The statute under which the plaintiff was incorporated provides that telegraph and telephone companies so formed may construct their lines "along and upon any postal roads and postal routes, roads, streets and highways, or across any of the bridges or waters within the limits of this State, by the erection of the necessary fixtures, including posts, piers or abutments for sustaining the cords or wires of said lines, without their being deemed a public nuisance, or subject to be abated by any private party, provided the same shall not be so constructed as to incommode injuriously the public use of said postal roads or postal routes, roads, highways and bridges, or injuriously interrupt the navigation of said waters, or interfere with the convenience of any landowner more than is unavoidable." *Code,* Art. 23, sec. 359. Permission to such companies to lay any part of their lines underground, wherever they are authorized to construct them above the surface, is given by section 405 of Article 23 of the Code.

The general privilege thus accorded telegraph and telephone companies, formed under our incorporation law, to construct their lines on the public highways without thereby subjecting themselves to liability for the creation of a nuisance, does not place the State under any contractual or other

obligation to permit any individual company, availing itself of the privilege and protection afforded by the statute, to occupy and use the higways of the State without compensation. *Postal Telegraph Co.* v. *State Roads Commission,* 127 Md. 256. The right of the City of Baltimore, in the exercise of powers delegated by the State, to impose a charge of $2.00 for each telegraph, telephone, electric light or other pole used in any of the streets, lanes or alleys of the city, was sustained by this Court, and, in an affirmance of its judgment, by the Supreme Court of the United States, in the case of *Postal Telegraph Cable Company* v. *Baltimore,* 79 Md. 502, 156 U. S. 210. The decisions in that case over-ruled the contention that the disputed charge was an interference with interstate commerce, or an infringement of the telegraph company's rights under the Act of Congress relating to the use of post roads, and held that the ordinance in question did not attempt to place any restrictions on the interstate business of the company, or to exclude it from the use of the city's streets, but simply and legally required a reasonable compensation to be paid by the company for its occupancy of ground which the city owned and controlled. This view was fully supported by the case of *St. Louis* v. *Western Union Telegraph Company,* 148 U. S. 92, in which the legality of a municipal charge for telegraph poles on the streets of St. Louis was sustained. An effort was made in that case to defeat the charge on the ground that the telegraph company's poles were maintained in compliance with the terms of a pre-existing general ordinance, which made no such exaction, and that the company was assessed for taxes on its property by the State and city, and that it had constructed and was operating its lines on the streets of the city in pursuance of authority conferred by the Act of Congress of 1866 relating to the use of post roads for such purposes. These defenses were unavailing. It was held that the charge was not an additional tax upon the property of the telegraph company, but was in the nature of rent which

the company could properly be required to pay for appropriating "to its own and sole use a part of the streets and public places of the city." It was further decided that no contractual relation appeared to exist between the city and the company, under the pre-existing ordinance, which prevented a reasonable charge for the maintenance of the company's poles on the city's streets. The theory that the Act of Congress relied upon by the company rendered it immune from such a demand was likewise rejected. The Court said: "It is a misconception, however, to suppose that the franchise or privilege granted by the Act of 1866 carries with it the unrestricted right to appropriate the public property of the State. It is, like any other franchise, to be exercised in subordination to public as to private rights. * * * This rule extends to streets and highways; they are the public property of the State. While for purposes of travel and common use they are open to the citizens of every State alike, and no State can by its Legislature deprive the citizens of another State of such common use, yet when any appropriation of any part of its public property to an exclusive use is sought, whether by a citizen or corporation of the same or another State, or a corporation of the National Government, it is within the competency of the State, representing the sovereignty of that local public, to exact for its benefit compensation for this exclusive appropriation. It matters not for what that exclusive appropriation is taken, whether for steam railroads or street railroads, telegraphs or telephones, the State may, if it chooses, exact from the party or corporation given such exclusive use pecuniary compensation to the general public for being deprived of the common use of the portion thus appropriated."

The principle applied in the decisions to which we have referred is manifestly reasonable and just, and is conclusive of the question as to the right of the State to impose such a charge as the one now under consideration. In this instance, however, the charge is imposed not by the State's direct legis-

lative act, but by an order of the State Roads Commission, and the further important inquiry to be made is whether that body has been invested with power to prescribe and enforce the payment of compensation by a public service corporation like the plaintiff for its use of the State roads.

The State Roads Commission was created by the Act of 1908, Chapter 141, "with full powers to construct, improve and maintain public roads and highways in this State." The provisions of the Act, with amendments, are embodied in Article 91 of the Code of Public General Laws. They contain specific directions and authorizations to the Commission with respect to road improvement and maintenance and the appropriation and use of the funds provided by the State for those objects. No express power is given the Commission to create sources of revenue in connection with its management of the road system, but the authority to make charges of the kind here considered is sought to be inferred from the provisions of section 37A of the Act, as codified, which so far as pertinent to the present question, are as follows: "No opening shall be made in any such highway, nor shall any structure be placed thereon, nor shall any structure which has been placed thereon be changed or renewed except in accordance with a permit from the Commission, which shall exercise complete control over such highways, except as herein otherwise provided. No State highway shall be dug up for laying or placing pipes, sewers, poles or wires or railways, or for other purposes, and no trees shall be planted or removed or obstructions placed thereon without the written permit of the State Roads Commission, or its duly authorized agent, and then only in accordance with the regulations of said Commission; and the work shall be done under the supervision and to the satisfaction of said Commission; and the entire expense of replacing the highway in as good condition as before shall be paid by the persons to whom the permit was given or by whom the work was done."

It is argued that the power of control and regulation conferred upon the commission by the provision just quoted

involved the authority to require reasonable payments to be made for such privileges in the State roads as the present plaintiff enjoys or seeks to exercise. In support of this theory cases have been cited in which the rights of municipalities to make rental charges for the use of their streets by telephone or telegraph companies was predicated upon the charter power of control and regulation of the city streets. This Court held in *Postal Telegraph Company* v. *Baltimore, supra,* that the City had the right to make the charge there in controversy because of its full control over its thoroughfares, but in that, and other like cases, the power of regulation and control was coincident with the proprietary interest of the municipality in the streets affected by the use for which compensation was exacted. In *Cambridge* v. *Water Co.,* 99 Md. 505, it was said in the opinion that the charge sustained in *Postal Telegraph Co.* v. *Baltimore, supra,* was imposed by a municipality "which owned and had complete control over its streets," and which was therefore entitled to demand compensation for their use and occupation by the poles of the telegraph company. There is a material difference between the status of a city, invested with legislative power in reference to the streets under its control and ownership, and the functions of an administrative road commission, which is given no interest as proprietor in the highways of the State, but is created for the special purposes of road construction and maintenance, and the regulation of roadway uses which might otherwise interfere with the convenience of public travel. If the Legislature had intended to delegate to the Commission authority to impose charges upon telegraph and telephone companies for the use of the State roads in the maintenance and operation of their lines, it may be assumed with reasonable certainty that such an important purpose would have been definitely expressed or clearly implied, and would not have been left to depend upon a strained construction of terms which are consistent with a design to reserve to the State itself the exclusive power

to make and enforce such charges. . The question we are now considering was raised in the case of *State Roads Commission* vs. *Postal Telegraph Company,* 123 Md. 73, where its decision was found to be unnecessary for the purposes of that litigation. As now presented the question should be determined, and our conclusion is that the State has not delegated to the State Roads Commission the requisite authority for the imposition of the charges to which the bill refers.

It does not result, however, from the view we have expressed, that we must reverse the order by which the injunction sought by the bill was refused. The Telephone Company was not entitled to locate its conduits and manhole in the Bel Air Road without a permit issued by the State Roads Commission, in the exercise of regulative powers expressly conferred and of undisputed validity, and having admitted in the bill that it could have obtained a permit for the work without the payment of the charges to which it objected, and without any limit as to the duration of the privilege, there was no occasion for an injunction to protect its asserted rights. The proposed reservation by the Commission of the question as to its authority to require such a payment in the future did not render the permit any less available or gratuitous for present purposes, and did not affect any valid objection of the company to any charge against it which the Commission might subsequently impose. The Court below was, therefore, entirely right in refusing to grant the injunction. As the order to that effect, from which the pending appeal was taken, has no relation to the exaction of payments for new telephone poles, of which the bill also complains, it is not necessary to determine whether the passage of a declaratory decree on that subject, as prayed in the bill, would have been a proper exercise of equitable jurisdiction.

*Order affirmed, with costs.*